John T. KITT, Jr., Appellant,

v.

UNITED STATES, Appellee.

No. 11722.

District of Columbia Court of Appeals.

Submitted Aug. 24, 1977.

Decided Nov. 3, 1977.

Tony Bisceglie, law student counsel, and Warren R. King, Washington, D. C., appointed by the court, were on the initial brief for appellant. Ana Colon, law student counsel, and Warren R. King, Washington, D. C., were on the reply brief for appellant.

---

Earl J. Silbert, U. S. Atty., and John A. Terry, William D. Pease, Richard W. Goldman, and Robert I. Richter, Asst. U. S. Attys., Washington, D. C., were on the brief for appellee.

Before NEWMAN, Chief Judge, and KERN and HARRIS, Associate Judges.

HARRIS, Associate Judge:

Appellant was convicted of possession of a dangerous drug (amphetamine) in violation of D.C. Code 1973, § 33–702(a)(4). He challenges the trial court's refusal to allow him and two other defense witnesses to testify on direct examination as to their respective prior criminal convictions. We conclude that the trial court erred, but that the error was harmless, and hence we affirm.

I

The testimony was contradictory. The government's evidence was as follows. One evening, two Metropolitan Police casual clothes officers patrolling in an unmarked car at Logan Circle observed appellant looking into a briefcase. The officers parked their car and walked toward appellant. As they approached and announced that they were police officers, they saw appellant drop a small tin foil packet and a black capsule from his right hand. One officer examined the tin foil packet. When he discovered white powder inside, he placed appellant under arrest. A search of appellant subsequent to the arrest revealed a second black capsule in appellant's right front pants pocket. The officers then started to check the briefcase for a weapon, at which time appellant attempted to eat the capsules and the tin foil packet and had to be forcibly restrained from doing so.

A forensic chemist testified for the government that the white powder inside both the tin foil packet and the two black capsules was an amphetamine. He testified that the capsules could have been sold commercially and that Biphetamine, a trade name used by a particular drug manufacturer, could show up as an amphetamine in the testing process. He explained that if the capsules had been produced by that drug company, there would have been a trademark on them. There was no such trademark on the capsules recovered from appellant.

The defense evidence consisted of the testimony of appellant, his girl friend Julia Scott, and his brothers Wesley and Clifford Kitt. Julia Scott testified that in May 1976 she was attempting to lose weight by taking Biphetamine which she had purchased with a doctor's prescription. On a Thursday in mid-May, appellant asked her to type some poems and short stories which he had written, and he gave her his briefcase with the writings inside. She took the briefcase with her to work, placing inside two Biphetamine capsules and a tin foil packet containing the contents of another two capsules. She left the briefcase at work and took it home with her after work the next day. She forgot the medication and left it in the briefcase when she returned it to appellant as he left for the weekend.

The testimony of appellant was that he gave the briefcase to Scott on Wednesday or Thursday, and received it back from her on Monday. The next day, while walking down the street, he stopped to look through the briefcase for a telephone book. When he opened the briefcase, some papers fell out. As he was picking them up he saw two men walking towards him saying, "Hey, stop." He started to walk away when the men came up to him. They first asked him what was in the briefcase and then asked for identification. Not knowing that they were police, appellant did not respond. One of the officers pulled a gun. Appellant then gave them his identification card and the briefcase. The officers emptied the briefcase, and two black capsules came out. The men asked appellant to put his hands behind his back, and, after complying, he was hit on the head by something hard.

Appellant further testified that at the time he was arrested he was wearing blue flair pants with no pockets, which he subsequently sent to his mother or brother from

jail because the authorities would not let him keep them. Portions of his testimony were corroborated by Julia Scott and by his brothers.

On direct examination, appellant was questioned about a prior conviction. The government objected, and a bench conference was held. The trial court concluded that defense counsel's questioning of appellant on direct examination concerning his prior convictions was not probative, and sustained the objection. On cross-examination thereafter, appellant was impeached with his prior convictions for manslaughter and petit larceny. The court immediately gave the standard cautionary instruction concerning the limited use of evidence of prior convictions.[1]

Prior to the testimony of appellant's brothers, defense counsel sought a ruling on whether he could bring out their prior convictions on direct examination. The trial court ruled that he could not. After each brother subsequently was impeached on cross-examination, the court again gave the standard cautionary instruction.

## II

Appellant contends that it was reversible error for the trial court to have precluded appellant and two of his defense witnesses from testifying on direct examination as to their respective prior convictions. By statute, either party to a criminal proceeding may attack the credibility of a witness for the other side by cross-examination (subject to certain restrictions) as to prior criminal convictions of the witness. D.C. Code 1973, § 14–305. Nothing precludes either side from bringing out the prior criminal record of one of its own witnesses on direct examination as a matter of trial strategy, and precisely that tactic previously has been utilized by the government with judicial approval. *See, e. g., United States v. Stroble*, 431 F.2d 1273, 1275 (6th Cir. 1970); *United States v. Freeman*, 302 F.2d 347, 350 (2d Cir. 1962). We conclude that the trial court should have afforded defense counsel the same privilege traditionally accorded the government to bring out on direct examination damaging information about the defendant and his witnesses, with the attendant protection of an appropriate cautionary instruction as to its limited use by the jury, if such is requested by counsel.[2]

Nonetheless, we see no basis for concluding that the trial court's erroneous ruling as to the order in which the prior convictions came to the jury's attention impermissibly infected the verdict. The defense testimony was inconsistent, and there is substantial evidence supporting the conviction. It is highly doubtful at best whether direct testimony as to their prior convictions by the three brothers would have altered the jury's evaluation of their credibility. We find that reversal is unwarranted under the applicable standard set forth in *Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), since we are able to say "with fair assurance . . . that the judgment was not substantially swayed by the error." *Id.* at 764–65, 66 S.Ct. at 1248.

The trial court's rulings under review thus constituting harmless error, the judgment appealed from must be affirmed. *See* D.C.Code 1973, § 11–721(e).

---

1. D.C. Bar Ass'n, Criminal Jury Instructions for the District of Columbia, No. 1.08 (2d ed. 1972).

2. Such examination would not constitute impeaching one's own witness. *Cf.* D.C.Code 1973, § 14–102. In actuality, it would be designed to accomplish exactly the opposite result, *i. e.*, it would be an effort on the part of the defense to defuse the effect of a prior conviction of a witness by having him "tell it on himself." Of course, irrespective of which side introduces such evidence, the government remains free to argue its significance as to the witness' credibility.