# MICHAEL ANTHONY WHITEHEAD v. STATE OF MARYLAND

[No. 1002, September Term, 1982.]

*Decided April 15, 1983.*

The cause was argued before MASON and ADKINS, JJ., and CHARLES E. ORTH, JR., Associate Judge of the Court of Appeals (retired), specially assigned.

*Mark Colvin, Assigned Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Jillyn K. Schulze, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* and *Joseph C. Sauerwein, Assistant State's Attorney for Prince George's County,* on the brief, for appellee.

ADKINS, J., delivered the opinion of the Court.

At the conclusion of a jury trial in the Circuit Court for Prince George's County, appellant Michael Anthony Whitehead was convicted of felony murder, conspiracy to commit armed robbery, theft, and use of a handgun in the commission of a crime of violence. He was sentenced to a total of life plus fifteen years imprisonment. On this appeal, he makes numerous assignments of error. In view of our disposition of the case, we need consider only four of them. They are that:

1. The trial court erred in refusing to give a limiting instruction after Whitehead had admitted, during direct examination, to a prior armed robbery conviction.

2. The trial court erred in refusing to allow defense counsel to inspect, for purposes of cross-examination and impeachment, notes of oral statements made by the prosecution's chief witness.

3. The trial court erred in refusing to dismiss the theft count.

4. The trial court erred in refusing to give a specific intent instruction with respect to the theft charge.

*Refusal to Give a Limiting Instruction With Respect to Evidence of Prior Conviction*

As a general rule, and subject to certain exceptions, the fact that a witness, including a criminal defendant, has previously been convicted of a crime is admissible in evidence, if at all, only on the issue of the witness's credibility. *Ross v. State,* 276 Md. 664, 350 A.2d 680 (1976). When evidence of conviction of a prior crime is admissible on the issue of credibility, what is admissible is normally limited to the fact of the former conviction, as opposed to details about the commission of the earlier crime. *Robinson v. State,* 53 Md. App. 297, 452 A.2d 1291 (1982); Courts and Judicial Proceedings Article § 10-905 (a). When a former conviction is admitted for the purpose of impeachment, the party against whom it is admitted is generally entitled to a limiting or cautionary instruction, advising the jury that the evidence may only be considered on the issue of credibility, and not as tending to prove guilt of the crime which is the subject of the pending case. *See, e.g., Piles v. State,* 233 Md. 487, 489, 197 A.2d 238, 239 (1964) (instruction therein "correctly stated the law").

In the case at bar, no one takes issue with these general principles. The controversy here arises from the fact that Whitehead himself, on direct examination, testified to a former conviction of armed robbery, unrelated to the crimes for which he was then on trial. The trial judge declined to give a cautionary instruction because Whitehead did not introduce the former conviction for purposes of impeachment of

himself. Whitehead now argues that he was entitled to such an instruction even though his counsel elicited the evidence on direct examination in order to "minimize the impact of this conviction on the jury. . . ." The State, on the contrary, contends that a limiting instruction is required only when the prior conviction is introduced solely for the purpose of impeachment, and not when that evidence comes in in an effort "to impress the jury with [the defendant's] propensity to admit guilt when guilt exists in the hope that the jury would conclude that he would have likewise admitted guilt [in the instant case] . . . had it existed." The State also argues that the prosecution's use of prior conviction evidence went beyond efforts to impeach, in that they amounted to rebuttal of Whitehead's claim that his participation in the offense was not intentional.

What happened at the trial was this:

When Whitehead took the stand in his own defense, defense counsel elicited some general background information. Then the following colloquy occurred:

Q. Mike, have ever been in trouble before?
A. Yes, I have.
Q. When was that?
A. Seventy-nine.
Q. What happened?
A. I pleaded guilty to armed robbery.
Q. Where was that armed robbery charged?
A. In Prince George's County.
Q. Did you go to jail? What happened?
A. I served two years and a half in the penitentiary, Hagerstown.
Q. When did you get out of prison, Michael?
A. The 16th of July last year.
Q. And when you got out of prison, where did you come back to?
A. Live with my mother in Capitol Heights.

Whitehead then testified to events that had occurred on the date of the crimes with which he was charged. These included the facts that he had encountered one Donald Brown, that at Brown's request he had started an automobile without the use of ignition keys, that he had driven the car to a certain location at Brown's directions, that Brown had entered a "store" in Hampton Mall, then left the store and instructed Whitehead to drive away, and that Brown then told Whitehead that Brown had shot a man.

On cross-examination, the relevant portions of the questioning went as follows:

Q. When did you get out of jail?

A. July 16th, last year.

Q. When were you sentenced?

A. Hagerstown Penitentiary.

Q. When were you sentenced before that?

A. Seventy-nine.

Q. What month?

A. I don't know. I can't remember the month.

Q. What were you convicted of?

A. Armed robbery.

Q. What else?

A. Use of a handgun.

Q. Use of a handgun. And what else?

A. Armed robbery, use of a handgun, and a handgun in the commission of a felony.

Q. All right. Out of a different case?

A. No, the same case.

Q. Were you also convicted of transporting, carrying or wearing a handgun in 1979?

A. No, I was not.

Q. Any different — you were not? You didn't plead —

A. Not that I can recall, no.

Q. Not that you can recall. You remember being convicted on the same date, July 25, 1979, carrying and transporting a handgun, and being sentenced to a concurrent sentence with the sentence in the armed robbery, the offense occurring November '78? Do you remember the offense date in the armed robbery?

A. No, I do not.

Q. Was it January 10, 1979?

A. I do not know.

Q. You don't know?

A. No.

Q. Are you saying you weren't convicted then of a separate handgun offense?

A. Not that I know of.

Q. It wasn't you who plead guilty?

A. No, not that I recall.

\* \* \*

Q. What was the sentence you were sentenced to for the armed robbery?

A. Twelve years.

Q. Then you got out in July of 1981?

A. Yes, I did.

Q. When you got out, you mean you were paroled?

A. Yes, I was.

Q. Did you have a parole agent supervising you?

A. Yes, I did.

Q. And you knew that if you were involved in any type of an offense for which you would be arrested, you could very well go back to prison for the remaining portion of time, is that correct?

A. Yes, I did.

Q. And it didn't bother you at all about getting in a car, that you didn't know whether it had any tags on it or not, is that correct?

A. No, it is not.

* * *

Q. You knew the car was stolen, didn't you?

A. Yes, I did.

Q. And that didn't bother you, being in a stolen car?

A. It bothered me.

Under the circumstances disclosed by the record, as quoted above, we hold that Whitehead was entitled to the cautionary instruction he requested.

What occurred below was apparently a manifestation of a practice described in *United States v. Bad Cob,* 560 F.2d 877, 883 (8th Cir. 1977):

> The introduction by a witness himself, on his direct, of a prior conviction is a common trial tactic, recommended by text writers on trial practice. There is a paucity of authority justifying in theory this well-accepted practice, but it has been justified on the ground that it serves a two-fold purpose: (a) to bring out the witness' "real character", the whole person, particularly his credibility, and (b) to draw the teeth out of the adversaries' proper use of the same evidence on cross-examination.

Others have suggested that this strategy helps "take the sting out [of impeachment by proof of former conviction] and prevents the prosecutor from bringing it out. . . ." F. Bailey and H. Rothblatt, *Successful Trial Techniques,* 222 (1971). *See* 1 I. Goldstein and F. Lane, *Goldstein Trial Technique,* § 11.30 (2 Ed. 1969).

In *Kitt v. United States,* 379 A.2d 973 (D.C. App. 1977), for example, the court held evidence of the defendant's prior convictions admissible as part of his case, observing "[n]othing precludes either side from bringing out the prior criminal record of one of its own witnesses on direct examination as a matter of trial strategy. . . ." 379 A.2d at 975. *See also U.S. v. Vanco,* 131 F.2d 123 (7th Cir. 1942) (govern-

ment allowed to introduce evidence of prior conviction of one of its witnesses).

The technique had made appearances in Maryland. Very recently in *Chadderton v. State,* 54 Md. App. 86, 456 A.2d 1313 (1983), we held that it was not an abuse of discretion to permit the prosecution to elicit from several of its witnesses information about prior convictions. And a few months earlier, in *Robinson v. State, supra,* we decided that a defendant had not opened the door to unlimited cross-examination about his prior criminal activities when on redirect examination he revealed a guilty plea in connection with a prior conviction and his rejection of a chance to plead guilty to the charges for which he was then being tried. But the issue before us now — whether a cautionary instruction is required when such testimony comes in — was not raised in either *Chadderton* or *Robinson.* Indeed, this precise issue does not appear to have been decided in any reported Maryland case.

The precise issue has been raised in at least a few of our sister jurisdictions, and decided in apparently contradictory fashion. In *Smith v. State,* 268 Ark. 282, 595 S.W.2d 671 (1980) the defendant, charged with aggravated robbery, testified on direct examination that he had been previously convicted of burglary, grand larceny, assault with intent to rob, and armed robbery. The trial court refused to give a cautionary instruction. The Supreme Court of Arkansas recognized that evidence of former crimes is normally admissible only for purposes of impeachment, but said that that rule applies only when the evidence is offered by the State. The court went on to hold:

> Appellant voluntarily testified as to his prior conviction, not for the purpose of showing that jury he was not credible, but for the purpose of impressing the jury with his honesty and sincerity and of emphasizing the facts that his eligibility for parole would be postponed on account of these convictions. Under these circumstances, he was not entitled to the requested instruction. . . . *Id.* at 286, 595 S.W.2d at 674.

On the other hand, in *Romans v. Commonwealth,* 547 S.W.2d 128, (Ky. 1977), where the defendant, on trial for rape, admitted on direct examination that he had served time in the penitentiary for forgery, the Supreme Court of Kentucky held that Romans was entitled to a cautionary instruction. The basis for this decision was the Kentucky rule that a jury may not consider the fact of a prior conviction as substantive evidence of guilt.

A similar result was reached by the District of Columbia Court of Appeals in *Kitt v. United States, supra.* There, the court concluded "that the trial court should have afforded defense counsel the same privilege traditionally afforded the government to bring out on direct examination damaging information about the defendant and his witnesses, with the attendant protection of an appropriate cautionary instruction as to its limited use by the jury, if such is requested by counsel." 379 A.2d at 975.

Of similar purport is *State v. Fredericks,* 149 Conn. 121, 176 A.2d 581 (1961). In that case, Fredericks, charged with receiving stolen goods, on direct examination testified to a previous conviction of receiving. The trial court instructed the jury that it could consider the prior conviction as a circumstance bearing on whether Fredericks had knowledge that the goods he was then charged with receiving had in fact been stolen. His conviction was reversed on the ground that the prior conviction evidence would normally be admissible only on the issue of credibility.

In yet other cases, when the defendant himself introduced evidence of prior convictions, cautionary instructions were given in the trial court. Such cases include *United States v. Buchanan,* 659 F.2d 878 (8th Cir. 1981); *State v. Sinclair,* 57 N.J. 56, 269 A.2d 161 (1970); and *State v. Hultenschmidt,* 87 Wash.2d 212, 550 P.2d 1155 (1976).

Thus, the weight of authority and of practice supports the view that a defendant is entitled to a cautionary instruction under the circumstances presented in this case. The only decision we have found apparently rejecting this rule is *Smith v. State, supra.* But the unusual facts of that case make it

dubious precedent. In addition to admitting to earlier convictions, Smith in effect admitted his guilt of robbery in the pending case (although not of the aggravated robbery with which he was charged) and his counsel indicated that a verdict of not guilty was really not an option for the jury. In Arkansas, juries fix sentences under certain circumstances, and among the things that Smith wanted the jury to understand was that his eligibility for parole would be postponed on account of his prior convictions. Apparently, he hoped that the jury would take that into consideration in sentencing. Under those circumstances, it is perhaps not surprising that the Supreme Court of Arkansas decided that Smith was not entitled to a cautionary instruction.

We think that reason (as well as authority and practice) supports the view that a defendant who himself introduces evidence of prior convictions is entitled to a cautionary instruction. As we have pointed out, in the common situation, in which the prosecution introduces such evidence, the purpose is generally impeachment and, therefore, a cautionary instruction is appropriate. When the defendant puts in evidence of this sort, it is obviously not for purposes of impeachment. As the District of Columbia Court of Appeals pointed out in *Kitt:*

> Such examination would not constitute impeaching one's own witness. . . . In actuality, it would be designed to accomplish exactly the opposite result, *i.e.,* it would be an effort on the part of the defense to diffuse the effect of a prior conviction by having him "tell it on himself." 379 A.2d at 975 n.2.

But whether the evidence comes in in an effort to minimize the impact of prosecution presentation or in an attempt to convince the jury that the defendant is a frank and honest person, it is still produced on the issue of credibility; perhaps sometimes to bolster credibility, but it is credibility, nevertheless, that makes the evidence relevant. It is not relevant on the substantive issue of guilt or innocence. If this be so, and if we are to continue to apply rigid scrutiny to

introduction of prior conviction evidence in order "to offset or avoid as well as [we] can, the inherent human tendency to substitute a predisposition of guilt for the constitutional presumption of innocence when an accused's reputation as a 'bad man' becomes known", *Hoes v. State,* 35 Md. App. 61, 71, 368 A.2d 1080, 1086 (1977), the basis for requiring a limiting instruction in this case becomes apparent. We think Justice Palmore of the Supreme Court of Kentucky put it well when he asked:

> Why should the law be different when the defendant has made the disclosure voluntarily upon direct examination? . . . . Are we in a game in which by the introduction of *competent evidence* a party deprives himself of the right to have the jury properly instructed that its purpose is limited to impeachment of his credibility?
>
> . . . [I]n this case we are not concerned with admissibility, but with the right of a party to have the jury advised of the special purpose for which admissible evidence is to be considered. *Shockley v. Commonwealth,* 415 S.W.2d 866, 872 (Ky. 1967) (Palmore, J., dissenting) [emphasis in original].

In *Shockley,* Justice Palmore wrote for the minority of a sharply divided court which rejected the need for a cautionary instruction. That holding of *Shockley* was overruled in *Romans v. Commonwealth, supra,* in which the Supreme Court of Kentucky adopted the rule we now adopt, with Justice Palmore writing for a unanimous court.

We hold that Whitehead was entitled to a cautionary instruction and that the trial court erred in refusing to give one.[1] Because Whitehead's credibility was an important issue in the case, we cannot conclude that the error was harmless beyond a reasonable doubt. *Dorsey v. State,* 276 Md. 638, 350 A.2d 665 (1976).

---

1. During cross-examination of Whitehead, the State elicited prior conviction evidence over and above that which Whitehead had admitted on direct. This provides an additional reason for the granting of a cautionary

*Other Matters*

Although our disposition of the preceding issue makes it unnecessary to review any other contentions raised by Whitehead, we think it desirable to examine some of them, "for guidance of the lower court" on retrial. Maryland Rule 1085.

a. *Inspection of Notes of Oral Statements Made by Chief Prosecution Witnesses*

At Whitehead's trial, Donald Brown testified for the State. Brown had been charged with murder in connection with the offenses for which Whitehead was being tried, and the State had originally sought the death penalty. Later, as a result of plea negotiations, Brown agreed to plead guilty to first degree murder and to testify against Whitehead in exchange for withdrawal of the death penalty request and a recommendation for a life sentence, with all suspended but 30 years. Among other things, Brown testified that he had shot and killed the victim while Whitehead remained outside as lookout.

At the conclusion of Brown's cross-examination, defense counsel, anxious to impeach Brown, asked to be allowed to inspect notes made by three different police officers and by an assistant State's Attorney during pre-trial interviews of Brown. In one of these interviews, it was claimed that Brown had identified Whitehead as the "shooter" contrary to Brown's testimony on direct. Counsel had been given a summary of the oral statements. The trial court refused to require production of any notes, and declined defense counsel's request that the court inspect them *in camera,* to determine any discrepancies between the notes and the summary. We hold that the trial judge did not err.

Had Brown been a codefendant, Whitehead would have been entitled to a copy of each "written or recorded statement" of Brown which the State intended to use at trial

instruction. We find the State's argument that its cross-examination of Whitehead as to prior conviction was conducted for purposes other than impeachment unpersuasive.

and "the substance of each oral statement" made by Brown. Md. Rule 741 b.3. There were no written or recorded statements. Whitehead had been given a summary of the oral statements. Thus, it appears he had all (if not more) than that required by the rule. Nevertheless, citing *Carr v. State,* 284 Md. 455, 397 A.2d 606 (1979) and *Leonard v. State,* 46 Md. App. 631, 421 A.2d 85 (1980), *aff'd.* 290 Md. 295, 429 A.2d 538 (1981), he claims the notes should have been produced.

Neither *Carr* nor *Leonard* supports his position. In both of those cases, the production required was of prior signed statements of witnesses whose testimony incriminated the accused. The validity of prior *signed* statements as a basis for impeachment because of inconsistency with testimony is clear.

Whitehead points to *Goldberg v. United States,* 425 U.S. 94 (1976) in which the Supreme Court had before it the Jencks Act, 18 U.S.C. § 3500.[2] That act requires the government, under certain circumstances, "to produce any statement . . . of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified." 18 U.S.C. § 3500 (b). The statute defines "statement" as including, *inter alia,* "a written statement made by such witness and signed or otherwise adopted by him." 18 U.S.C. § 3500 (e) (1). But even under the Jencks Act, an investigator's notes of a conversation with a witness are not necessarily producible for impeachment purposes. For example, in *March v. United States,* 362 A.2d 691 (D.C. App. 1976) the court considered whether "statements" contained in a police officer's notes qualified as "statements" for Jencks Act purposes. It held:

> It does not appear that a police officer's investigative notes . . . would fall within the legislative con-

---

**2.** See Jencks v. United States, 353 U.S. 657 (1957). Maryland has no statutory equivalent of the Jencks Act, although the underlying principles set forth in the Jencks opinion have been judicially adopted in Maryland. Chief, Montgomery County Police Dept. v. Jacocks, 50 Md. App. 132, 436 A.2d 930 (1981).

templation [of the Jencks Act]. As such materials are normally but abbreviated characterizations and summaries of a witness' actual comments, the notes would rarely, if ever, rise to a degree of completeness (*i.e.* "substantially verbatim") sufficient to satisfy the rigorous prerequisites of the Act. 362 A.2d at 699-700. [citation omitted].

*See also Palermo v. United States,* 360 U.S. 343, 352 (1959).

Even if the notes requested by Whitehead were in existence when he demanded them (a fact not at all clear from the record) we hold that on the record before us he was not entitled to them. *Compare Tolbert v. State,* 391 N.E.2d 823 (Ind. 1979); *State v. Abernathy,* 295 N.C. 147, 244 S.E.2d 373 (1978); *State v. Jacoby,* 260 N.W.2d 828 (Iowa 1977); *People v. Caldwell,* 39 Ill. App.3d 1, 349 N.E.2d 462 (1976); *Hooks v. State,* 416 A.2d 189 (Del. Supr. 1980).

b. *Dismissal of the Theft Count*

The fifth count of the indictment against Whitehead charged him with unlawfully stealing, on or about a specified date, a specifically-described 1981 Chevrolet Monte Carlo, the property of Mary Jane Durity, having a value of over $300, "in violation of Art. 27, § 342 of the Annotated Code of Maryland." The indictment was in the form authorized by Art. 27 § 344 (a). Whitehead moved to dismiss it because, according to him, it failed to allege the essential elements of the offense charged and further because it charged him with five different criminal offenses in the disjunctive. These contentions in effect assert that the indictment failed to satisfy the requirements of Article 21 of the Declaration of Rights because it was insufficient to charge an offense, give him information necessary to enable him to prepare his defense, and to protect him from future prosecution for the same offense. *State v. Morton,* Md. , No. 71, Sept. Term, 1982 (March 3, 1983); *Ayre v. State,* 21 Md. App. 61, 318 A.2d 828 (1974).

Putting aside for the moment the essential elements problem, we do not think that this count was duplicitous or ineffective to protect Whitehead from double jeopardy. Nor do we think that he was furnished information insufficient to enable him to prepare his defense.

We recognize that only one offense may be charged in a single count of an indictment. *State v. Hunt,* 49 Md. App. 355, 432 A.2d 479 (1981); *Ayre v. State, supra.* Whitehead claims that the indictment's reference to § 342 in effect charges him with five different offenses, because the section describes five different circumstances under which a person may be guilty of theft. We disagree.

Article 27 § 341 provides "Conduct designated as theft in this subheading [of which § 342 is a part] constitutes a single crime. . . ." The subsections of § 342 merely specify different acts or transactions through which theft can be proved. There is no constitutional requirement that the means by which an offense was committed be set forth in an indictment. *State v. Morton, supra. Pearlman v. State,* 232 Md. 251, 192 A.2d 767 (1963), *cert. den.* 376 U.S. 943 (1964). *Neusbaum v. State,* 156 Md. 149, 143 A. 872 (1928). Nor is this a case, like *Ayre, supra,* in which the indictment charged numerous different offenses in the disjunctive. The effect of the indictment here was to charge the crime of theft by any or all of the five methods: "An accusation of theft may be proved by evidence that it was committed in any manner that would be theft under this subheading. . . ." Art. 27 § 341. Even if separate offenses were involved, charging them in the conjunctive, which is what the fifth count effectively did, would resolve the duplicity, notice and double jeopardy problem of which Whitehead complains. *Bonneville v. State,* 206 Md. 302, 111 A.2d 669 (1955); *see Ayre v. State, supra.*

Moreover, the State furnished a bill of particulars in which it advised that, as to count five, it intended to show that Whitehead had violated "Article 27, Section 342 (c) (1) (i), (ii), (iii):" the subsection of § 342 providing that "[a] person is guilty of theft if he possesses stolen property knowing

that it has been stolen, or believing that it has probably been stolen. . . ." It may be that a bill of partIculars generally will not save a substantively defective indictment. *State v. Morton, supra; State v. Lassotovitch,* 162 Md. 147, 159 A. 362 (1932); *Delcher v. State,* 161 Md. 475, 158 A. 37 (1932); *and see State v. Canova,* 278 Md. 483, 499, 365 A.2d 988, 998, n.21 (1976). But a bill of particulars may itself solve the double jeopardy problem because "should a second prosecution for the same offense be attempted, the accused could bar a retrial by producing the record of the case." *State v. Morton, supra,* 295 Md. at 494, 456 A.2d at 913; *Spector v. State,* 289 Md. 407, 424, 425 A.2d 197, 205, *cert. den.* 452 U.S. 906 (1981).

And on the issue of notice, the Court of Appeals has recognized that a bill of particulars may remove an objection to an indictment based on uncertainty; *State v. Morton, supra; Thomas v. State,* 173 Md. 676, 688, 197 A. 296, 301-302 (1938). *See also Larmore v. State,* 180 Md. 347, 24 A.2d 284 (1942) and *Neusbaum v. State, supra.* We think that the indictment, as particularized, gave Whitehead adequate notice of the acts he had allegedly committed. This approach was clearly contemplated by the drafters of the present theft laws, who said, in comments on what is now Art. 27, § 344 (a):

> This subsection provides a simplified form of indictment for charging persons with the consolidated crime of theft under the newly enacted Section 342 of Article 27. . . . Since theft is a single offense and all aspects of that offense are encompassed in Section 342 . . . only that Section need be cited. However, because of the wide diversity of the aspects which are included within the crime of theft, the prosecution will undoubtedly be required to furnish the defendant with a bill of particulars. Joint Committee on Theft-Related Offenses, *Revision of Maryland Theft Laws and Bad Check Laws* 57 (Dept. of Legislative Reference 1979) 57.

That is what was done here, and we think that the particulars served to give Whitehead all the notice to which he was entitled as to the conduct he was charged with committing.

But we are still left with the problem of whether count five charged all the essential elements of the offense of theft. We conclude that it did.

As the Court of Appeals made clear in *Ayre v. State,* 291 Md. 155, 433 A.2d 1150 (1981), the failure to allege in the charging document the essential elements of a crime is fatal. This is true even when the indictment is in a statutorily authorized form. The Court said in *Ayre:*

> The failure to allege material elements of the offense is not a mechanical defect in the charge, and thus cannot be brushed off by the facile citation of cases which indicate that the modern trend of courts is to reject outworn legalistic formulas for criminal allegations. We deal here not with hypertechnical rules of pleading which plague unwary prosecutors and free fortuitous defendants, but rather a requirement imposed upon the State as a constitutional minimum. 291 Md. at 165, 433 A.2d at 1156.

The indictments under review in *Ayre* charged the defendants with "unlawfully selling a magazine entitled 'Swedish Erotica 22' which was reviewed by Judge Ciotola and found to be obscene in violation of [Art. 27] section 418." 291 Md. at 162. The Court of Appeals held those indictments to be insufficient because they failed to include direct allegations that the material was obscene and because they lacked allegations that the distribution of obscene material had been done knowingly. *Id. See also Fitzsimmons v. State,* 48 Md. App. 193, 426 A.2d 4 (1981).

In the case at bar, as we have noted, Whitehead was charged with unlawfully stealing a specific car in violation of Article 27, § 342. There was no allegation that this had been done knowingly. Unlike *Ayre* and *Fitzsimmons,* the reference to the statute here was not a mere citation for the

purpose of convenience. Here, the specific charge, pursuant to § 344 (a), was that Whitehead had violated the theft statute. The effect of charging in that manner was, as we have indicated, to incorporate by reference the elements of the statutory offense of theft, as enumerated in § 342, as though the section had been set forth in full in count five of the indictment. This incorporation by reference would of necessity include elements of wilfulness or knowledge.

Additionally, we think that count five of the indictment was sufficient by reason of the concept of "implied scienter". In *Bosco v. State,* 157 Md. 407, 146 A. 238 (1929), the appellant argued that an indictment for attempted bribery of a justice of the peace was insufficient because it failed expressly to allege that the defendant knew the person whom he attempted to bribe was a justice of the peace. But the Court of Appeals held that even though that knowledge or scienter was necessary to the charge, "it need not be an express allegation. It is sufficient if it is necessarily implied from a statement of the acts which constitute the offense." *Id.* at 410, 146 A. at 239.

A similar situation was presented in *Rice v. State,* 9 Md. App. 552, 267 A.2d 261, *cert. den.,* 259 Md. 735 (1970). There, the appellant had been charged and convicted of *inter alia,* kidnapping, Md. Code, Art. 27, § 337, but the indictment failed to incorporate from the statute the phrase "with intent to have such person carried". The facts alleged in the indictment, however, made it "manifestly impossible for the accused in the instant case to have assaulted the victim and against her consent forcibly have carried her within this state without having an 'intent to have such person carried within this state. . . .' Thus, the instant indictment, by implication, alleged the necessary specific intent." *Id.* at 565, 267 A.2d at 268. For other cases holding that a statement in the indictment of the act implies scienter, *see Hagner v. United States,* 285 U.S. 427 (1932) (Mail Fraud); *Calvaresi v. United States,* 216 F.2d 891 (1954) (Bribery of Jury); *Creswell v. State,* 161 Tenn. 320, 30 S.W.2d 247 (1930) (Bribery of Juror). We hold that an allegation of unlawfully

stealing in an indictment for theft implies the essential element of scienter.

### c. *Specific Intent Instructions as to the Theft Charge*

The theft charge against Whitehead was tried under Art. 27 § 342 (c) (1) (i) in accordance with count five of the indictment, as particularized. As to that count, the trial judge instructed the jury:

> A person commits the offense of theft if he possesses stolen property knowing that it has been stolen, or believing that it was probably stolen. That's it, that's the crime of theft.

Despite Whitehead's request, the judge did not give a "specific intent" instruction.

Subsection (c) of § 342 requires the showing of at least one of three different types of intent if a person is to be found guilty of theft by reason of possession of stolen property he knows or believes to have been stolen. These intents are that the person charged

> (i) Has the purpose of depriving the owner of the property; or
> (ii) Wilfully or knowingly uses, conceals, or abandons the property in such manner as to deprive the owner of the property; or
> (iii) Uses, conceals, or abandons the property knowing such use, concealment, or abandonment probably will deprive the owner of the property.

To convict a person under subsection (c), at least one of these specific intents must be proved beyond a reasonable doubt, in addition to possession of stolen property knowing or believing that the property has been stolen.

In view of this, it is clear that the judge's theft instruction was incomplete because of its failure to inform the jury about

the state of mind element of the offense. The State concedes
that this was error, and we agree.

> *Judgments reversed.*
> *Case remanded for further pro-*
> *ceedings not inconsistent with*
> *this opinion.*
> *Costs to be paid by Prince*
> *George's County.*