REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2586

September Term, 2013

_____

SUSAN DeGRANGE

v.

STATE of MARYLAND

_____

Zarnoch,
Reed,
Sharer, J. Frederick
    (Retired, Specially Assigned)

JJ

_____

Opinion by Sharer, J.

_____

Filed: February 3, 2015

Following a trial in the Circuit Court for Frederick County, a jury convicted appellant, Susan DeGrange, of failure to comply with a peace order and resisting arrest.[1] The trial court sentenced appellant to 18 months in prison, suspending all but 30 days, on the charge of resisting arrest, after which she filed a timely notice of appeal.[2]

Appellant presents the following question for our consideration, which we have rephrased slightly:

> Is the evidence sufficient to sustain the convictions for resisting arrest and failure to comply with a peace order?

For the reasons set forth below, we shall affirm the judgments of the trial court.

## FACTUAL BACKGROUND

On June 24, 2013, Robert Wormley went to the Frederick County Sheriff's Office to report that appellant was present at his residence in violation of a March 2013 peace order, which prohibited her from being on the property.[3] Deputy Timothy Grove was dispatched to Wormley's residence for the trespassing call.

When he arrived, Grove found appellant standing outside the residence, accompanied by a pit bull. Grove asked appellant to secure the dog so he could arrest her for violating a

---

[1]The State *nolle prossed* a trespassing charge prior to trial.

[2]The court imposed no sentence on the charge of failure to comply with a peace order.

[3]According to Wormley, appellant, an off and on resident with whom he had once discussed engagement, had been living in the house for at least two weeks. When asked why he had not called the police sooner, Wormley answered, "I don't know that answer, but I didn't."

peace order; instead, she took the dog into the house and locked the door behind her. She

ignored Grove's several requests to come outside and speak with him.

Grove then contacted Wormley, who was still at the Sheriff's Office, and asked him

to return to the residence and open the door with his key. Wormley, Grove, and Sergeant

Gary Kline, who had served the peace order on appellant in March 2013, entered the

residence.[4] The officers identified themselves and called out to appellant several times, but

she did not respond or appear. A search of the house revealed appellant sitting on a bed in

an upstairs bedroom, the pit bull at her feet.

Wormley secured the dog, and Grove repeatedly asked appellant to stand, advising she

was in violation of a peace order, and under arrest. She refused, so Grove placed his hands

on her arms to stand her up and place her in handcuffs. She pulled her arms away to keep

from being taken off the bed.

Grove then pulled one of appellant's arms behind her back, while Kline attempted to

grab her other arm. In the process, appellant fell face forward onto the bed. She then began

to fight and struggle with the officers, attempting to pull her arms and hands under her body.

Grove ordered appellant to put her hands behind her back, but she refused, kicking

and yelling. Kline, using "the least amount of force possible," "had to wrestle her arm

behind her back" so she could be handcuffed. She did not cause injury to either police

---

[4]Kline testified that when he served the peace order on appellant, she grabbed the paper and tore it to pieces.

officer.  Once handcuffed, appellant was removed from the residence and taken to central booking for further processing.

At the close of the State's case-in-chief, appellant moved for judgment of acquittal. Regarding the charge of failure to comply with a peace order, she argued that she had been charged conjunctively with committing or threatening to commit all of the acts specified in Md. Code (2013 Repl. Vol.), §3-1503(a) of the Courts & Judicial Proceedings Article ("CJP") – contacting or threatening to act, attempting or threatening to attempt to contact, harassing or threatening to harass, and entering or threatening to enter the residence of Wormley – and the State had not proved every one of those offenses.[5]  The court, ruling that appellant was charged with "failure to comply with the order," which charge "couldn't be any clearer," denied the motion on that ground.

On the charge of resisting arrest, appellant argued that, pursuant to this Court's decision in *Rich v. State*, 205 Md. App. 227 (2009), "forceful offensive action" against the arresting police officers was required to sustain a charge of resisting arrest.  Because both officers testified that neither was injured effectuating the arrest, they were not in danger from appellant, and she cannot be said to have made aggressive or forceful offensive actions

---

[5]CJP §§3-1503.1, 13-504, and 13-505 detail the scope of an interim peace order, a temporary peace order, and a final peace order, respectively; each order may require the respondent to refrain from committing or threatening to commit an act specified in CJP §3-1503(a) against the petitioner, refrain from contacting, attempting to contact, or harassing the petitioner, refrain from entering the residence of the petitioner, and remain away from the petitioner's place of employment, school, or temporary residence.

toward them. Disagreeing that *Rich* was apposite, the trial court also denied the motion on that ground.

Appellant testified that she and Wormley began dating in 2007 and that she moved into his house in early 2008 while recovering from surgery. She had lived in his house off and on until June 2013. She denied having been served with a peace order in March 2013. She further denied ever having been asked by Wormley to move out of his house.

On June 24, 2013, there had been a storm that caused a temporary power outage, so when the sheriff's deputy arrived and instructed her to take the dog inside, she thought it was for her own safety; it was for that reason that she took the dog and went into the house. The "next thing you know," she said, two officers, whom she did not know were in the house, grabbed her, flipped her over, and handcuffed her without telling her why she was being arrested. She denied making any aggressive motions toward, or pulling away from, the officers.

At the close of all the evidence, appellant renewed her motion for judgment of acquittal, reincorporating the same arguments she had made at the close of the State's case. The court again denied the motion.

## DISCUSSION

Appellant contends that the evidence presented at trial was insufficient to establish that she used force to resist a lawful arrest. As to the peace order violation, she argues that, in order to sustain a conviction for violation of a peace order, the State was required, but

4

failed, to prove that she violated *each* of the proscribed acts. In addition, she avers that the State failed to establish that she was subject to a continuing peace order because Wormley nullified the order by permitting her continued residence in his house.[6]

The State counters that appellant's claims of insufficiency of the evidence are meritless, as the evidence, viewed in a light most favorable to the prosecution, permitted a rational jury to infer that the appellant resisted a lawful arrest and failed to comply with a peace order.

This Court recently set forth the applicable standard of review in determining the sufficiency of the evidence on appeal:

> The test of appellate review of evidentiary sufficiency is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. The Court's concern is not whether the verdict is in accord with what appears to be the weight of the evidence, but rather is only with whether the verdicts were supported with sufficient evidence-that is, evidence that either showed directly, or circumstantially, or supported a rational inference of facts which could fairly convince a trier of fact of the defendant's guilt of the offense charged beyond a reasonable doubt. We must give deference to all reasonable inferences [that] the fact-finder draws, regardless of whether [the appellate court] would have chosen a different reasonable inference. Further, we do not distinguish between circumstantial and direct evidence because [a] conviction may be sustained on the basis of a single strand of direct evidence or successive links of circumstantial evidence.

---

[6]Although conceding that she failed to preserve this issue for appellate review by not setting forth this specific argument before the trial court, appellant urges this Court to invoke its discretion to review the matter for plain error. We decline the invitation.

*Donati v. State,* 215 Md. App. 686, 718, *cert. denied*, 438 Md. 143 (2014) (Internal quotation marks and citations omitted).

## Resisting Arrest

The crime of resisting arrest was a common law offense in Maryland until codified in 2004. *Rich v. State*, 205 Md. App. 227, 239 (2012). The applicable statute, Md. Code (2012 Repl. Vol., 2013 Supp.), §9-408(b) of the Criminal Law Article ("CL"), provides that "[a] person may not intentionally resist a lawful arrest." The elements of the crime that the State must prove are that: (1) a law enforcement officer arrested or attempted to arrest the defendant; (2) the arrest was lawful, and; (3) the defendant refused to submit to the arrest and resisted the arrest by force.[7] *Rich,* 205 Md. App. at 240, 250. The purpose of criminalizing such behavior is " to protect police officers from the substantial risk of physical injury." *Id.* at 255.

We held, in *Rich*, that *both* a refusal to submit to lawful arrest *and* resistance by force or threat of force are necessary to commit the crime of resisting arrest. *Id.* at 250. The level of force required, however, is not high. Although we agreed with Rich that "mere flight" from an arresting officer is not active conduct and does not supply the requisite force to sustain a conviction for resisting arrest, we pointed out, in *dicta*, that, for example, "when a person 'goes limp' in response to an officer's attempt to effectuate an arrest courts have

---

[7]In her brief, appellant does not argue that she was not subject to a lawful arrest by a law enforcement officer. She contends only that her actions did not rise to the level of resisting arrest "by force."

held that such conduct constitutes force for resistance purposes." *Id.* at 253 n. 8 and case cited therein.

In the matter *sub judice*, the arresting police officers testified that when they located appellant in the upstairs bedroom of Wormley's house, they asked her to stand and place her hands behind her back. When she refused, Grove placed his hands on her arms to stand her up and place her in handcuffs, but she pulled her arms away from him. Each officer then attempted to grab one of appellant's arms and place it behind her back, during which attempt she fell forward onto the bed, fighting and struggling with the officers and attempting to pull her hands and arms away from them, and under her body. Grove testified that she continued to refuse to submit to the arrest, kicking and yelling. Kline was then required to wrestle her arm behind her back to handcuff her.

In short, there was a decided conflict in the testimony from the officers and appellant as to the force required to effect the arrest, which presented a quintessential jury question. It is "axiomatic that weighing the credibility of witnesses and resolving any conflicts in the evidence are tasks properly assigned to the factfinder*." Marlin v. State*, 192 Md. App. 134, 153, *cert. denied*, 415 Md. 339 (2010). We agree with the jury that appellant's actions rose to the level of the amount of force required to sustain the conviction for resisting arrest.

### Failure to Obey a Peace Order

Pursuant to CJP §3-1508, "[a]n individual who fails to comply with the relief granted in an interim peace order under §3-1503.1 of this subtitle, a temporary peace order under §3-

7

1504(a)(2) of this subtitle, or a final peace order under §3-1505(d)(1)(i), (ii), (iii), or (iv) of this subtitle is guilty of a misdemeanor[.]" The relief granted by an interim peace order, a temporary peace order, and a final peace order may require the respondent to: refrain from committing or threatening to commit an act specified in CJP §3-1503(a) against the petitioner; refrain from contacting, attempting to contact, or harassing the petitioner; refrain from entering the residence of the petitioner, and/or; remain away from the petitioner's place of employment, school, or temporary residence.

The statement of charges against appellant alleged that she

did fail to comply with an order dated 3/15/2013, issued under the Annotated Code of Maryland, Courts & Judicial Proceedings Article, Sec. [3-1503/3 1504/3-1505] that ordered Respondent to refrain from [committing or threatening to commit any of the acts specified in Section 3-1503(A) of said Courts & Judicial Proceedings Article against Robert Wormley Jr. contacting, attempting to contact, harassing, entering the residence of Robert Wormley Jr. at 4235 Araby Church Rd.

Appellant argues before this Court, as she did below, that the charge required the State to prove that she committed every offense listed, *i.e.*, contacting Wormley, attempting to contact Wormley, harassing Wormley, *and* entering Wormley's residence. As the State proved only that she entered Wormley's residence, she concludes, the evidence was insufficient to prove that she failed to obey a peace order. Appellant's argument is not persuasive.

As the trial court aptly pointed out, appellant was charged with "failing to comply with an order," and "it's the terms of the order which are conjunctive," not the statement of

8

charges. In other words, the single charge was for violating a peace order, which, pursuant to CJP §3-1503.1, §3-1504(a)(2), or §3-1505(d)(1)(i), (ii), (iii), could have been accomplished by appellant's failure to refrain from contacting, attempting to contact, or harassing Wormley or her failure to refrain from entering Wormley's residence. In our view, the violation occurred if appellant committed any of those acts; the State was not required to prove she committed all of them. Indeed, the charging document itself specifies that appellant failed to comply with the peace order, which precluded her from "committing or threatening to commit *any* of the acts specified in CJP §3-1503(a)." (Emphasis added).

The defendant in *Whitehead v. State*, 54 Md. App. 428 (1983), made a similar argument, to no avail. On trial for theft, Whitehead claimed that the indictment against him charged him with five different offenses, because the applicable statute described five different circumstances under which a person may be guilty of theft. We disagreed, holding that conduct designated as theft "constitutes a single crime. . . ." The subsections of the statute "merely specify different acts or transactions through which theft can be proved. There is no constitutional requirement that the means by which an offense was committed be set forth in an indictment. . . The effect of the indictment here was to charge the crime of theft *by any or all of the five methods*." *Id.* at 442. (Emphasis added)

And, in *Cardin v. State*, 73 Md. App. 200 (1987), we reiterated that the theft statute set forth "five different factual situations which, if proved, constitute the crime of theft," including: (1) Obtaining or exerting unauthorized control over property of the owner; (2)

9

Obtaining control over property of the owner by deception; (3) Possessing stolen personal property knowing that it has been stolen, or knowing that it probably has been stolen; (4) Obtaining control over the property of another knowing that it is lost or mislaid property, and; (5) Obtaining the services of another by deception, or knowing that the services are provided without the consent of the person providing them. We held that "[c]learly, the gravamen of the offense of theft is the depriving of the owner of his rightful possession of his property. The particular method employed by the wrongdoer is not material; "an accusation of theft may be proved by evidence that it was committed in *any* manner that would be theft under this subheading. . . ." *Id.* at 211 (Emphasis added; internal quotation marks omitted).

We apply a similar analysis. The offense charged was failure to comply with a valid peace order, which, according to the charging document, could have been proved by evidence that appellant either contacted Wormley, attempted to contact Wormley, harassed Wormley, or entered Wormley's residence. Because appellant concedes that the State proved she entered Wormley's residence, the evidence was sufficient to sustain the conviction for the single charge of failure to obey a peace order.

> **JUDGMENTS OF THE CIRCUIT COURT FOR FREDERICK COUNTY AFFIRMED; COSTS TO BE PAID BY APPELLANT.**

10