## UNITED STATES v. VANCO.

### No. 8002.

Circuit Court of Appeals, Seventh Circuit.

Oct. 24, 1942.

Rehearing Denied Nov. 21, 1942.

Walker Butler, of Chicago, Ill., for appellant.

J. Albert Woll, U. S. Atty., of Chicago, Ill. (Maurice J. Walsh, Asst. U. S. Atty., and August H. Hoch, and Joseph H. Collier, Attys., U. S. Treasury Department, all of Chicago, Ill., of counsel), for appellee.

Before SPARKS, KERNER, and MINTON, Circuit Judges.

SPARKS, Circuit Judge.

The appellant, with three others, was charged by grand jury indictment in eight counts, with the violation of the Federal liquor laws, and with conspiracy. The first six counts, relating to offenses alleged to have occurred at 4718 West Kinzie Street in the city of Chicago, respectively charged the possession of an unregistered still; engaging in the business of distilling alcohol without bond; making and fermenting alcoholic mash, fit for distillation, outside an authorized distillery; possessing alcohol in containers which did not bear revenue stamps; engaging in the distillation of alcohol and defrauding the United States of the tax on such alcohol; and failure to post a sign on the distillery as required by law. The six counts charged that the alleged offenses were in violation respectively of sections 2810, 2833(a), 2834, 2803(a), 2806 (f), and 2831, all of Title 26, U.S.C.A.

Int.Rev.Code. Count 7 charged the possession of alcohol in containers which did not bear revenue stamps, at 814 North Lavergne Avenue, Chicago, in violation of section 2803(a), Title 26 U.S.C.A. Int.Rev. Code. Count 8 charged conspiracy to commit the offenses set forth in the preceding counts, during a period from November 28, 1940, to October 31, 1941, in violation of section 88, 18 U.S.C.A.

On motion of the Government, and without objection, a severance was granted as to appellant. The cause with respect to him was thereupon stricken from the docket with leave to the Government to reinstate it. The other three defendants were tried and convicted. The cause having been reinstated as to appellant, he was tried before a jury and found guilty on each charge of the indictment. Judgment was entered accordingly, and from that judgment this appeal is prosecuted.

The only errors assigned and discussed relate to instructions. Appellant contends that the trial court erred in giving the jury an improper instruction concerning accomplices, and in instructing the jury that the acts of appellant's co-defendants were binding upon him, and that it did not adequately instruct the jury that this would be true only if it were established beyond a reasonable doubt that appellant was engaged in the conspiracy as charged.

The following facts are supported by substantial evidence: A large illicit distillery was seized under federal search warrant on October 3, 1941, at 4718 West Kinzie Street, Chicago, Illinois. It contained two stills, an 11,000 gallon first-run still, and an 800 gallon re-cooker for production of high proof alcohol. 14,000 gallons of mash in four huge vats, and large amounts of other necessary distilling equipment, such as motors and tanks, were also found. The still was in operation attended by one of the other defendants. This property was located and operating in a one-story building containing three rooms, all connected and occupied only by the distillery operation.

The electric service for this building was contracted for on December 13, 1940. It was furnished by the Commonwealth Edison Company upon an application signed by this appellant in these premises in the presence of a representative of the Commonwealth Edison Company and two other defendants who were working in that building. Appellant told this representative that his name was Joseph Burke, and he so signed his name to the application. He said that the nature of his business was "roofing materials." This application when signed constituted a contract between appellant and the Company and it remained in effect until after October 3, 1941. It was the only electric service contract in force at that address during that period.

At 814 North Lavergne Avenue, there is a large garage, 30 feet wide by 60 feet long, at the rear of the lot. For some time prior to September 23, 1941, this garage had been under surveillance by government agents. During that period a two-tone red Ford truck and a green panel body truck bearing license number B 115,504, were seen entering that garage. They were loaded with what appeared to be one-hundred pound sacks of sugar. On September 17, 1941, these trucks were seen being followed by the defendant, Frank Daniels, in his Plymouth coupe which bore an Illinois license number B 1,795,305. A witness, James Callozzo, testified that he was then serving a sentence in the Illinois State Penitentiary for robbery with a gun, that he had previously been convicted in 1941 for selling sugar, and that another indictment, the nature of which he did not know, was then pending against him. He further stated that he was in the sugar business in April, 1941, and that he had a sugar customer named Frankie Vanco. He said that he owned three trucks, two green ones and a two-tone red one, and he identified two of their license numbers as B 115,504 and B 115,505. From April, 1941, to September, 1941, he at several times sold sugar to a Frankie Vanco. He usually delivered this in his trucks but it was occasionally picked up by Vanco in a 1936 Ford sedan. Between the dates last mentioned he had delivered one hundred bags of sugar, each weighing 100 pounds, to Vanco on an average of twice a week. However, in three or four days, from September 21 to September 24, 1941, he delivered three or four hundred bags of sugar to Vanco at Chicago Avenue and Christiana Street. In making these latter deliveries he turned the trucks over to Vanco at that place, and Vanco left the trucks in a vacant lot for Callozzo to pick up the next day. He denied, however, that appellant was the man he knew as Vanco.

Among other vehicles observed to be operating on many occasions to and from the garage above referred to, was a 1936 Ford bearing license number 1,710,032,

which was seized when Fusco, a defendant, drove it loaded with empty five-gallon cans to the still premises on the night of October 3, 1941, shortly after the government agents had obtained entry thereto under a search warrant. On that occasion Fusco had in his possession the keys for the doors of the garage and the distillery.

A grey Plymouth coupe bearing license number 1,795,305, was continuously used by Frank Daniels, another defendant, during the period of observation, to escort trucks and to visit the premises at the garage and the distillery. George Daviduke, one of the defendants, was also seen in this automobile with Daniels. When the garage was searched, a red Diamond T truck was there seized, loaded with seventy-five sacks of sugar of one hundred pounds each. This truck was observed by a government agent at the distillery on September 26, 1941. At the time of the search of the garage there were also found therein sixty-two five-gallon cans of alcohol and thirty-eight one-hundred pound sacks of sugar on the garage floor together with various pumps and motors and other distilling equipment including 350 empty five-gallon cans.

On September 24, 1941, the 1936 Ford coach, bearing license number 1,710,032, in which Fusco was later arrested, was seen to leave the garage premises and was followed by the agents to the distillery. On April 2, 1941, the defendant Daniels, accompanied by appellant, negotiated the purchase of a 1937 Ford at the Kenwood Motors. Subsequently Daniels traded this Ford into the Tremont Company on the purchase of a Plymouth coupe bearing serial number 1,401,452, which was the automobile observed by the agents on and about the operations between the still and the garage. Appellant was seen entering the still premises many times during the spring and summer of 1941, and was usually accompanied by another man, and sometimes they drove a 1936 red Ford coach. In response to an inquiry from a witness who lived in the vicinity of the distillery as to what appellant was doing there, the latter replied that he was making roofing cement in the building.

Appellant's first contention related to the propriety of the following instruction of the court:

"Certain witnesses who have testified in this case have openly admitted that they are law violators and have openly admitted the part that they had in the commission of crime. Such persons may be termed accomplices. *You will scrutinize the testimony of such witnesses very carefully, and before convicting defendant upon the testimony of an accomplice alone you should be absolutely certain in your own minds that he is telling the truth.*

"The mere fact that the witness is an accomplice, the mere fact that he is a law violator, does not mean that you cannot convict a person charged upon the testimony of an accomplice alone *if you believe that testimony to be true, so the weight and credit to be given to the testimony of a person who has admitted his part in the commission of crime is for you to decide.*"

■ Appellant's brief, in discussing this assignment, does not set forth those parts of the instructions which we have italicized. Appellant called the court's attention to the fact that there was only one witness who had thus testified. The court thereupon amended this instruction by making it refer to a certain witness instead of witnesses, and the jury was reinstructed in this respect. We think this suggested defect was thereby cured. However, appellant says that he is not so much concerned with that defect as he is with the fact that the Government witness referred to, Callozzo, was permitted to testify on direct examination that he had previously been convicted of other serious crimes, including the illegal sale of sugar, and was then an inmate of the Illinois State Penitentiary by reason of his conviction on the charge of armed robbery. These transactions were in nowise connected with the appellant Vanco or with the case on trial, hence, appellant urges that their admission in evidence was prejudicial to him in that the jury was thereby led to believe that Callozzo, a man of bad character, was his accomplice in the case at bar.

■ The Government has at no time contended that appellant was in any way connected with the crimes admitted by Callozzo in his testimony. Such testimony was properly admitted by the court as bearing on the credibility of the witness. Undoubtedly such admissions might have been properly educed by appellant on the cross-examination of that witness as affecting his credibility, and this no doubt would have been done by appellant, had the Government failed to do so. The Government therefore was warranted in anticipating such cross-examination and in eliciting

such testimony on direct examination. Such a method of procedure is quite well recognized and approved.

Appellant further contends that all other testimony of Callozzo tended to show that he was not an accomplice of appellant in the case at bar. To be sure, he was not a defendant in this action, and it was not necessary that he should be, nor was he charged as a conspirator, but neither of those facts would conclusively disprove the fact that he was an accomplice of appellant in the case at bar. It is quite true that Callozzo said he did not know appellant, and further stated that appellant was not the person known to him by the name of Frankie Vanco. Appellant seemed to think that the Government vouched for the credibility of this witness by placing him on the stand and that it is therefore bound by his testimony. This is not true. Before the Government questioned Callozzo relative to his testimony bearing directly on the main case, it elicited from him his character in detail for the jury, in order that the jury might be better enabled to judge of the witness's credibility, and that they might determine from all the facts if his testimony, or any part of it, were true or false.

The facts here related abundantly disclose the reasons for submitting on direct examination witness's character from his own mouth. When he failed to identify appellant as Frankie Vanco, to whom he had sold the sugar, the Government immediately claimed surprise and was properly permitted to proceed as in cross-examination, regardless of the aspersive reflection his admitted character might have upon appellant. It was then that he testified that he was the owner of trucks seen driven into the premises of the garage in question, and observed being escorted on the streets by the defendant, Frank Daniels, in the vicinity of that garage. He admitted that he was the owner of a green truck bearing license number B 115,504, which he used in delivering sugar to Frankie Vanco. He further testified that when he delivered sugar to Vanco, the delivery was at some point on the city streets other than the premises of the garage or the still; that he there turned his trucks over to Vanco, picked up his empty trucks the next day at a pre-arranged spot, and that on other occasions the sugar was picked up from him by Vanco in the 1936 Ford sedan.

From these facts the jury was warranted in finding that Callozzo was assisting appellant in carrying out the conspiracy, and it was immaterial whether Callozzo had guilty knowledge of such facts or was an accomplice in any manner. His testimony, however, in connection with all the other evidence leaves no doubt in our minds that he was an accomplice of appellant in the case at bar. The jury was warranted in coming to the same conclusion by reason of his secretive deliveries of sugar to appellant. We are not informed by the evidence as to whether such amounts of sugar are used in the fabrication of roofing materials, but we take judicial notice of the fact that such amounts of sugar as were delivered by Callozzo to appellant were quite necessary in the distillation of alcohol. The jury evidently believed that appellant was a customer of Callozzo and that conclusion is supported by the evidence beyond any reasonable doubt regardless of Callozzo's denial of it.

■ We think the court erred in instructing the jury that Callozzo might be considered as an accomplice, because it was an instruction upon a question of fact. The court, however, further instructed the jury that it was their duty to disregard any expression of opinion by the court upon any question of fact, and that it was their duty to determine all questions of fact for themselves. Under these circumstances we think that this error was harmless.

■ Appellant stresses the point that the court erred in not instructing the jury that the acts of the other defendants with respect to the alleged conspiracy, outside the presence of appellant, were not admissible to establish that charge against appellant, unless other competent evidence for that purpose had established a prima facie case of the alleged conspiracy against him. Such instruction in substance is proper in all conspiracy cases, and the failure to so instruct may be quite harmful in cases where there is a reasonable doubt as to the existence of the conspiracy, or as to the defendant's participation therein. However, where as here, all reasonable doubts, if any, as to the existence of the conspiracy among the other defendants, are admitted to have been dissipated, and appellant's participation therein has been proved beyond a reasonable doubt by evidence other than the acts of the other defendants, we are unable to see wherein the failure to give such instruction was in any way harmful to appellant, in view of all the other instructions. That the conspiracy

existed among the other defendants was admitted by appellant's counsel in his colloquy with the court immediately after the jury was instructed. He said, " * * * there is not any question that the proof here shows that the defendant Daniels, * * * did * * * something toward the accomplishment of this conspiracy. * * *"

That appellant was a party to that conspiracy was established beyond any reasonable doubt by his acts and statements proved to have been done and made by him at or upon the still premises, such as signing the contract for the electric lighting of the building, and stating that he was then and there about to engage in the business of making roofing materials; and again in August, 1941, stating that he was there engaged in making roofing cement. In about two months from the date of this last statement, it was disclosed by the service of the search warrant that a large still for the distillation of alcohol was then and there in operation, and there was no indication that roofing materials of any kind were there being made. Moreover, during all the time since signing the light contract he was frequently seen coming to and entering the still premises, and during all this time large amounts of sugar were being purchased by and delivered to him.

We think there is no harmful or reversible error in this record and that the verdict and judgment are based upon substantial and sufficient evidence.

Judgment affirmed.