# DANIEL LEE CHADDERTON v. STATE OF MARYLAND

[No. 994, September Term, 1982.]

*Decided March 4, 1983.*

The cause was argued before MORTON, MOYLAN and BISHOP, JJ.

*Michael R. Braudes, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Patricia E. McDonald, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, Thomas E. Hickman, State's Attorney for Carroll County,* and *Frank A. Coleman, Assistant State's Attorney for Carroll County,* on the brief, for appellee.

MORTON, J., delivered the opinion of the Court.

A Carroll County grand jury returned an indictment charging the appellant, Daniel Lee Chadderton, with first degree murder. Thereafter, the State's Attorney for Carroll County filed a "Notice of Intention to Seek Sentence of Death," asserting that appellant murdered Mary Ruth Myers pursuant "to an agreement or contract for remuneration or the promise of remuneration to commit the murder." Subsequently, the state's attorney filed a "Suggestion for Removal" on the ground that "the State cannot have a fair and impartial trial in the Circuit Court for Carroll County . . . ." Over appellant's objection, the case was removed to the Circuit Court for Garrett County.

After a trial before a jury in the Circuit Court for Garrett County (Thayer, J., presiding), the appellant was convicted of first degree murder. Because the jury was unable to agree that the death sentence should be imposed, the appellant was sentenced to life imprisonment.

In this appeal appellant raises six issues:

"I. The jury in Appellant's case was improperly selected.

II. Appellant's trial was improperly removed to Garrett County.

III. The trial court erred in failing to strike a prospective juror for cause.

IV. The trial court erred in permitting the State to impeach and bolster the credibility of its own witnesses.

V. The trial court erred in excluding evidence of Appellant's good character.

VI. The evidence was legally insufficient to sustain the conviction."

## I.

In the course of selecting the jury, the trial judge, over appellant's objection, excused for cause all prospective jurors who announced that they had conscientious scruples against capital punishment. A typical question addressed to the prospective jurors went: "Do you feel so strongly about the imposition of the death penalty that your attitude would prevent you from making an impartial decision on the issue of guilt or not?" If the individual answered "Yes," he or she was excused from serving on the jury.

The appellant contends that the course followed by the trial judge denied him the right to a properly selected jury. In making this argument, the appellant recognizes that the Supreme Court of the United States in *Witherspoon v. Illinois,* 391 U.S. 510 (1968), *rehearing denied, Witherspoon v. Illinois,* 393 U.S. 898 (1968), approved the method of jury selection followed by the trial judge below, at least for the selection of jurors participating in the guilt or innocence phase of the trial as distinguished from the sentencing stage of the proceedings.

Appellant first asserts that he "was denied the right to a jury drawn from a fair cross-section of the community, as that concept has developed in Supreme Court cases decided since *Witherspoon.* " The appellant cites *Duren v. Missouri,* 439 U.S. 357 (1979), *Ballew v. Georgia,* 435 U.S. 223 (1978), and *Taylor v. Louisiana,* 419 U.S. 522 (1975), in support of his assertion. In our view, appellant's reliance upon these cases to support his argument is simply misplaced.

*Ballew* stands solely for the proposition that a trial on criminal charges before a five member jury deprives an accused of a right to trial by jury guaranteed by the Sixth and Fourteenth Amendments to the United States Constitu-

tion. *Taylor* held that an accused's right to a jury trial, guaranteed by the Sixth Amendment, is violated by the systematic exclusion of women from jury service. In *Duren,* the Supreme Court simply confirmed its holding in *Taylor.*

The holding in *Witherspoon v. Illinois, supra,* is not considered or even mentioned by name in *Ballew, Taylor,* or *Duren.* That these cases could somehow be said to overrule *Witherspoon,* as contended by appellant, is beyond rational comprehension. We have been referred to no case and we have found none which could be said to modify the *Witherspoon* holding or even suggest that it does not state the law regarding jury selection as it stands today.

In *Witherspoon,* the petitioner had argued that there is " 'competent scientific evidence that death-qualified jurors are partial to the prosecution on the issue of guilt or innocence.' " 391 U.S. at 517. The Supreme Court disposed of this assertion by stating that

> "The data adduced by the petitioner, however, are too tentative and fragmentary to establish that jurors not opposed to the death penalty tend to favor the prosecution in the determination of guilt. We simply cannot conclude, either on the basis of the record now before us or as a matter of judicial notice, that the exclusion of jurors opposed to capital punishment results in an unrepresentative jury on the issue of guilt or substantially increases the risk of conviction. In light of the presently available information, we are not prepared to announce a *per se* constitutional rule requiring the reversal of every conviction returned by a jury selected as this one was." 391 U.S. at 517-518.

Counsel for appellant sets out in his brief various studies [1]

---

1. Jurow, "New Data on the Effect of a 'Death-Qualified' Jury on the Guilt Determination Process," 84 Harv. L.Rev. 567 (1971); Goldberg, "Toward Expansion of Witherspoon: Capital Scruples, Jury Bias, and Use of Psychological Data to Raise Presumptions in the Law," 5 Harv. Civ. Rights — Civ. Lib. L. Rev. 53 (1970); White, "The Constitutional Invalidity of Convictions Imposed by Death-Qualified Juries," 58 Cornell L.Rev. 1176

which he contends have updated the data which the Supreme Court found to be "too tentative and fragmentary"; and on the basis of these studies and findings contends that data to support his proposition regarding jury selection are no longer tentative or fragmentary as found by the Supreme Court in *Witherspoon.* We have reviewed the data submitted by appellant and considered his discussions and arguments in support of his thesis. It is our opinion, however, that they do not invalidate or undermine the findings of the Supreme Court in its *Witherspoon* holding. While counsel for appellant has made a vigorous and commendable effort to escape the mandate of *Witherspoon,* we find that he has not succeeded. *Witherspoon v. Illinois, supra,* is dispositive of appellant's first issue.

## II.

Relying primarily upon Article 20 of the Maryland Declaration of Rights, appellant contends that he "was constitutionally entitled to be tried in Carroll County, where the offense was committed"; and that it was error to remove the case to Garrett County upon the suggestion of the State's Attorney for Carroll County that the state "cannot have a fair and impartial trial in the Circuit Court for Carroll County and requests that this case be transmitted for trial to another court having jurisdiction." Article 20 of the Maryland Declaration of Rights provides:

"That the trial of facts, where they arise, is one of the greatest securities of the lives, liberties and estate of the People."

Appellant argues that "[t]here is no ambiguity in the lan-

---

(1973); Ellsworth *et al.,* "Juror Attitudes and Conviction Proneness: The Relationship Between Attitudes Toward the Death Penalty and Predisposition to Convict," (1979); Bronson, "On the Conviction Proneness and Representativeness of the Death-Qualified Jury: An Empirical Study of Colorado Veniremen," 42 U.Colo.L.Rev. 1 (1970); Ellsworth and Fitzgerald, "Due Process vs. Crime Control: The Impact of Death Qualifications on Jury Attitudes," (1979); Zeisel, "Some Data on Juror Attitudes Toward Capital Punishment," (1968).

guage of Article 20 and it therefore must be interpreted as it is written: an accused has the absolute right to a trial where the facts of the accusation arise." This flat assertion by the appellant is not supported by any Maryland precedential authorities.

In *Stewart v. State,* 21 Md. App. 346 (1974), *aff'd,* 275 Md. 258 (1975), in an opinion authored by the late Judge C. Awdry Thompson, reference was made to a law review article, W. Blume, *The Place of Trial of Criminal Causes,* 43 Mich.L. Rev. 59, 60 (1944). Judge Thompson stated:

> "In a comprehensive analysis of the constitutional provisions for venue in all the states, *Blume* at 87 interpreted Art. 20 to be an 'indefinite' venue and vicinage provision, which established legislative autonomy over venue in Maryland:
>
>> 'The constitutions of Kentucky, Maine, Maryland, Massachusetts, Pennsylvania, Vermont, and Virginia either require a jury of the "vicinage," "country," or "vicinity," or merely declare it essential to try facts where they arise [Md.]. In these states the courts have shown a tendency to hold that trial in, or a jury of, the county where the crime was committed is not required. Venue in criminal cases is largely, if not entirely, under legislative control.' *Id.* at 93.
>
> Thus, in Maryland, there is no constitutional right to be tried in the county where the crime was committed." 21 Md. App. at 350-351.

Appellant recognizes the existence of Article IV, Sec. 8 of the Constitution of Maryland, but asserts that it only "appears to give the State the right of removal in capital cases." It is clear, however, that the provisions of Article IV, Sec. 8, go far deeper than simply giving an appearance of the state's right of removal in capital cases. Paragraph (b) of that article provides:

> "In all cases of presentments or indictments for offenses that are punishable by death, on sug-

gestion in writing under oath of either of the parties to the proceedings that the party cannot have a fair and impartial trial in the court in which the proceedings may be pending, the court shall order and direct the record of proceedings in the presentment or indictment to be transmitted to some other court having jurisdiction in such case for trial."

As long ago as 1888, the Court of Appeals announced in *McMillan v. State,* 68 Md. 307, 309-310:

"Sec. 8, Art. 4, of the Constitution was altered in some respects by the ratification of the amendment proposed in the Act of 1874, ch. 364. We do not doubt the right of the State to remove a criminal case under the provisions of the amended section; and we think that the State's attorney is the proper person to make the affidavit for removal in behalf of the State."

Appellant says that even if it is assumed that the state may have a right of removal in a capital case, it cannot be exercised unless the state makes "an adequate showing of cause." While this argument may have a somewhat appealing underpinning, it simply does not comport with the prevailing law in Maryland. In *Brack v. State,* 187 Md. 542, 544 (1947), it was stated:

"By the Constitution of Maryland, Article IV, Section 8, and by Code (1939), Article 75 Section 109, in cases of presentment and indictment for offenses which are or may be punishable by death, the right of removal to another Court is absolute. In all other cases of presentment or indictment the accused is required to make it satisfactorily appear to the Court that the suggestion is true or that there is reasonable ground therefor."

*See also Johnson v. State,* 271 Md. 189, 192 (1974); *Piracci v. State,* 207 Md. 499, 508 (1955); *Jones v. State,* 185 Md. 481, 485 (1946); *Davis v. State,* 8 Md. App. 480, 481 (1970).

Appellant further contends that "[b]ecause there is no rational basis for placing those in Appellant's class at a special disadvantage in the determination of the trial forum, an interpretation of Article 4, Section 8 which permits arbitrary removal by the State would violate Appellant's right to equal protection under the law." *Gibson, Tate & Austin v. State*, 17 Md. App. 246 (1973), is dispositive of this contention. There, Chief Judge Gilbert, speaking for the Court, stated, at 254:

> "Our perusal of the case law convinces us that there is nothing about Art. IV, § 8 of the Maryland Constitution that is violative of the United States Constitution."

He went on to say, at 257:

> "There is nothing invidious in the Maryland constitutional distinction between removal in capital and non-capital criminal offenses. The distinction serves as a means of preventing an abuse of removal and thereby facilitates, expedites, and reduces expense in the administration of criminal justice. That Maryland chooses to 'treat capital offenders differently' does not violate 'the constitutional rights' of those charged with non-capital offenses."

### III.

We find no merit in appellant's third contention that "[t]he trial court erred in failing to strike a prospective juror for cause." The contention is based upon the following colloquy between the trial judge and a prospective juror:

> "THE COURT: Finally, if you were suspicious of the defendant's guilt, or thought he might be guilty, but were not convinced beyond a reasonable doubt, would you have a tendency to vote for guilt simply for the protection of society?

MR. JAY:  Not necessarily, no.

THE COURT:  Do you think you might?

MR. JAY:  I don't believe —  ·

THE COURT:  Do you think —

MR. JAY:  — maybe, based on the evidence that I heard.

THE COURT:  Are you willing to accept that it must be beyond a reasonable doubt?

MR. JAY:  Yes, sir."

Whatever ambiguity appears in the prospective juror's answers to the trial judge's questions, as alleged by appellant, was eliminated by the prospective juror when he answered "Yes, sir" to the judge's question: "Are you willing to accept that it must be beyond a reasonable doubt?" The trial judge was entitled to believe the prospective juror's answer. Accordingly, there was no basis for excluding the prospective juror for cause.

## IV.

Likewise, we cannot find any merit in the contention that "[t]he trial court erred in permitting the State to impeach and bolster the credibility of its own witnesses." Appellant argues that

> "Several of the State's witnesses, most notably Tina Myers and Eric Nettles, were convicted criminals or accused of various crimes. Throughout the trial, one of the prosecution's tactics was to ask such witnesses on direct examination what crimes they had committed or been accused of, the terms of their deals with the State, and in some cases their recognition of an obligation to tell the truth in court. Defense counsel consistently objected. . . . The obvious purpose of this exercise was to take the sting out of defense counsel's use of these matters on cross-examination. Appellant submits that in doing so, the State violated two rules of evidence: it

impeached its own witnesses in violation of the 'voucher' rule, and it 'bolstered' the credibility of witnesses before they were properly impeached."

The trial tactic employed by the prosecuting attorney was undoubtedly annoying to defense counsel because, as appellate counsel says, "the information would have been, or in fact was, elicited by defense counsel on cross-examination." "Trial courts have, and may exercise, the widest discretion in the conduct of a trial, and that discretion may not be disturbed unless it is clearly abused." *Tobias v. State,* 37 Md. App. 605, 616 (1977). We see no abuse of the trial judge's discretion in permitting the prosecuting attorney to conduct his examination of the state's witnesses in the manner he employed.

## V.

Appellant complains that the trial judge erred in excluding evidence of his good character. The complaint apparently is based upon a question asked of a twelve year old witness who was the son of Tina Myers, a witness for the state who had been granted immunity from prosecution of the crime of murder for which the appellant was being tried. The boy had previously testified that his mother had told him that she had often lied. When the boy was asked what he thought of appellant, he was not permitted to express an opinion.

Md. Cts. & Jud. Proc. Code Ann., Sec. 9-115, requires "that for a character witness to give evidence based on personal opinion, he must have an 'adequate basis for forming an opinion as to another person's character . . . .' " *Durkin v. State,* 284 Md. 445, 446 (1979). In *Durkin* it was said, at 452: "Implicit in the language [of the statute] is the requirement that the trial judge determine that the character witness have a proper foundation for his opinion before it is admitted into evidence." The Court went on to say, at 453: "[M]uch deference will be paid to his determination, and it will be overturned on appeal only if there is a clear abuse of discretion."

The only testimony by which the state attempted to establish a proper foundation for opinion testimony was the statement by the twelve year old witness that he could not remember when he met appellant, except that it was around Christmas time of either 1979 or 1980. Clearly, an adequate basis had not been established for permitting the witness to express an opinion of the appellant's character. We see no abuse of the trial judge's discretion in excluding the witness's opinion evidence.

## VI.

Finally, appellant's counsel contends "[a]t Appellant's request, it is submitted that in the present case the evidence was legally insufficient."

In *State v. Rusk,* 289 Md. 230, 240 (1981), the test for determining the legal sufficiency of the evidence to sustain a conviction was delineated:

> "Of course, due process requirements mandate that a criminal conviction not be obtained if the evidence does not reasonably support a finding of guilt beyond a reasonable doubt. *Tichnell v. State,* 287 Md. 695, 415 A.2d 830 (1980). However, as the Supreme Court made clear in *Jackson v. Virginia,* 443 U. S. 307, 99 S. Ct. 2781, 61 L.Ed. 2d 560 (1979), the reviewing court does not ask itself whether *it* believes that the evidence established guilt beyond a reasonable doubt; rather, the applicable standard is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' 443 U.S. at 319 (emphasis in original)."

Appellant's trial was conducted from April 19 through May 10, 1982. It would serve no useful purpose to set out in this opinion all the evidence produced at his trial. We have carefully reviewed the trial record in this case and have no

problem in finding that the evidence, when viewed according to the *Rusk* standard, was legally sufficient to sustain appellant's conviction.

*Judgment affirmed; costs to be paid
by appellant.*