503 A.2d 739

**Robert Preston HOWARD**

v.

**STATE of Maryland.**

**No. 404, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

Feb. 5, 1986.

Certiorari Denied May 21, 1986.

278

Isaac S. Kershner, Assigned Public Defender (Alan H. Murrell, Public Defender, on brief), Baltimore, for appellant.

Mary Ellen Barbera, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., Kurt L. Schmoke, State's Atty. for Baltimore City and Haven Kodeck, Asst. State's Atty. for Baltimore City, on brief), Baltimore, for appellee.

Argued before BISHOP and ROBERT M. BELL, JJ., and JAMES S. GETTY, Associate Judge of the Court of Special Appeals (retired), Specially Assigned.

ROBERT M. BELL, Judge.

Robert Preston Howard, appellant, was convicted by a jury in the Circuit Court for Baltimore City of conspiracy to violate the robbery with a deadly weapon laws, for which he received a sentence of five years to the Division of Correction. In this appeal from the judgment thus rendered, appellant presents for our resolution six issues:

1. Was the evidence insufficient to sustain appellant's convictions [sic] of conspiracy to violate the robbery with deadly weapon law?

2. Did the court err in refusing to inform the jury of and include in the verdict sheet a possible verdict on the lesser included offense?

3. Did the court's re-instructions to the jury constitute reversible error?

4. Did the court err in denying appellant's request for an order to compel disclosure of an informant?

5. Did the court err in precluding appellant from disclosing his prior convictions on direct examination?

6. Was appellant denied his constitutional right to a speedy trial?

We will affirm.

### Factual Context

Early on the morning of December 21, 1983, Detective Grady received information from two other detectives that an informer had alerted them that a robbery was to take place later that morning. Detective Grady met with the informer and, without having paid for or promised anything in exchange, received, first hand, the following information: a former employee of the Loyola Federal Savings and Loan Association named Jimmy, and several other persons, whose identities were not known to the informer, had arranged to

rob a bank courier in the vicinity of Preston and Charles Streets; the conspirators would be riding in a green automobile, handicap license tag number 124–M; and a handgun would be carried inside a "canvas type" bag. Because Detective Grady did not inquire into the source of the information, that issue remained a mystery both at the pretrial hearing and at trial.

Detective Grady and two other detectives, staked out the area of Charles and Preston Streets, during which the vehicle described, its driver (later determined to be James Smith), appellant, and two other suspects were observed. For approximately forty-five minutes, the driver was observed to remain in the vehicle while the others made several trips to and from it. One of the suspects was carrying a "canvas type" bag, which was passed between appellant and the other two suspects at various times. When it became apparent that no robbery would take place and as the suspects were leaving the area, the four suspects, including appellant, were arrested. A bag containing a loaded handgun was recovered from Kenneth Smith and Theodore Shaw when they were arrested about four blocks from the target area.

Appellant moved prior to trial to require disclosure of the informant. Following a hearing, the court denied the motion, reasoning that the informant appeared to be no more than a conduit and, apparently, that the State intended to prove its case without reference to the informant.

At trial, one of the co-conspirators, James Smith, a former security guard at Loyola Federal Savings and Loan testified that he, appellant, Theodore Shaw, and Kenneth Smith conspired to "snatch" the money bag from the courier for Loyola Federal. According to James Smith, the plan was to push the unarmed guard and grab the bag; no weapon was to be used because none was perceived to be needed. He testified that he did not know that Kenneth Smith's bag contained a handgun. In fact, he testified that the use of a weapon was discussed and rejected. Finally,

James Smith stated that, after appellant's arrest, appellant asked him to tell the police that he had taken appellant to visit appellant's parole officer.

### 1. Sufficiency of the Evidence

Appellant's argument that the evidence is insufficient to support his conviction for conspiracy to violate the robbery with a deadly weapon law rests upon his belief that the evidence did not show an express agreement or understanding that a weapon was to be used and that there were not "sufficiently significant circumstances" to support an inference of such an agreement beyond a reasonable doubt. He points out that the co-conspirator, the only witness purporting to know the nature and details of the object of the conspiracy testified that a gun was not to be used. In light of that testimony, appellant says that the total circumstances do not support an inference beyond a reasonable doubt that a weapon was intended to be used.

 A criminal conspiracy is

> ... the combination of two or more persons, who by some concerted action seek to accomplish some unlawful purpose, or some lawful purpose by unlawful means. The essence or gist of criminal conspiracy is an unlawful agreement. The agreement is the crime, and the crime is complete without any overt act. Although the agreement need not be a formal transaction involving meetings and communications, there must nonetheless be a meeting of the minds reflecting a unity of purpose and design. (citations omitted)

*Mason v. State*, 302 Md. 434, 444, 488 A.2d 955 (1985). Its existence may be shown by circumstantial evidence which permits an inference that there exists a common design. *Johnson v. State*, 10 Md.App. 652, 662, 272 A.2d 422 (1971). That an understanding exists may be inferred from "sufficiently significant circumstances". *Jones v. State*, 8 Md.App. 370, 377, 259 A.2d 807 (1969). Whether there exists sufficient evidence to sustain appellant's conviction for criminal conspiracy must be determined by review-

ing the evidence in the light most favorable to the State and determining whether any rational trier of fact could have been convinced beyond a reasonable doubt of appellant's guilt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979), *Tichnell v. State*, 287 Md. 695, 415 A.2d 830 (1980).

■ Appellant does not question the sufficiency of the evidence to prove the existence of an agreement; he merely questions the substance of the agreement proved. We therefore will confine our inquiry to whether the trier of fact could find that the agreement proved involved the use of a deadly weapon. The State produced testimony from Detective Grady that one of the co-conspirators carried a blue canvas tote bag which was later found to contain a handgun, and which was, from time to time, passed among three of the four men, including appellant. The jury could have inferred from the fact that the canvas bag was possessed by appellant and two of the other co-conspirators at various times throughout the morning while in the vicinity of the bank whose courier was to be robbed, that each of the co-conspirators was aware of the gun and intended its use, if necessary. The jury was not required to believe the co-conspirators' testimony that the gun was not to be used.

## 2. Lesser Included Offense

Appellant did not except to the court's instructions concerning the possible verdicts returnable by the jury nor to those which described and defined the crimes charged. After deliberations had begun, the jury submitted a question to the court: "If a person in the commission of a crime has on his person a weapon, without his cohorts' knowledge, does the law consider his cohorts as if they themselves carried the weapon even if the cohorts had no knowledge of the weapon?" Thus cued by the jury's question, appellant, for the first time suggested that conspiracy to violate the robbery law is a lesser included offense of conspiracy to violate the robbery with a deadly weapon law and, thereupon, appellant requested the court to amend the verdict sheet

to include this "lesser included offense". The request was denied and the jury was re-instructed on the issue of participant liability and directed to determine if there had been committed a conspiracy to violate the robbery with a deadly weapon laws.

Appellant now complains that it is reversible error the court's failure to amend the verdict sheet to include conspiracy to commit robbery as a possible verdict and to inform the jury that it was an option. He relies primarily on his perception that conspiracy to rob is a lesser included offense of conspiracy to commit robbery with a deadly weapon.

■ We find no error. In *Insley v. State*, 32 Md.App. 46, 358 A.2d 246 (1976), the defendant, who was charged with intoxicated driving, complained that he was prejudiced by the court's refusal to submit, in addition to the charged offense, the charge of driving while ability was impaired to the jury. We said:

> We hold that such a choice was not available to Insley. The State charged him with one offense, and only one offense. He was charged with driving a vehicle while he was in an intoxicated condition, specified as being the conduct proscribed by Art. 66½ § 11–902(a). The State's choice to proceed on an "all or nothing" basis meant that the State forewent the right to drop down to a lesser charge, should its proof fail to result in a conviction of the greater charge. If this choice involved risk, the risk was on the State, not on the accused.

*Id.* at 48, 358 A.2d 246. *But see Battle v. State*, 65 Md.App. 38, 44 n. 1, 499 A.2d 200 (1985). This is dispositive of appellant's contention.

### 3. Reinstruction

Following receipt of the jury's question and after conferring with counsel, the court reinstructed the jury as follows:

> If a person participates with others in the commission of a crime of robbery with a dangerous and deadly weapon

he is just as guilty as the other person even though his role may not have been as big and even though he may personally not have personally possessed the weapon. The defendant in these proceedings is charged with conspiracy to commit a crime of robbery with a dangerous and deadly weapon. It is therefore your responsibility to determine whether he and the others so conspired, particularly this defendant because he is on trial.

Appellant complains that

[t]he reinstruction neither defined possession nor answered the jury's question regarding the significance of the lack of knowledge by co-conspirators. Clearly it did not address the central issue of whether the evidence in light of all relevant circumstances, including possession as defined by law ... showed that the "agreement" included the use of a deadly weapon.

He concludes that the reinstruction was misleading, confusing, and prejudicial because of "[t]he court's projection of an accomplished robbery with a deadly weapon by joint perpetrators as the basis for determining whether the agreement included the use of a weapon."

■ Md. Rule 4–325 provides, in pertinent part:

(a) When Given—The court shall give instructions to the jury at the conclusion of all the evidence and before closing arguments and may supplement them at a later time when appropriate ... (emphasis added)

The decision to supplement its instructions and the extent of supplementation are matters left to the sound discretion of the trial judge, *Funkhouser v. State*, 51 Md.App. 16, 31, 440 A.2d 1114 (1982), whose decision will not be disturbed on appeal in the absence of a clear abuse of discretion. *See Battle v. State*, 287 Md. 675, 685, 414 A.2d 1266 (1980).

■ We discern no abuse of discretion. Although from an academic perspective and in a vacuum, appellant's argument may possess some surface appeal, we point out that the trial judge is in the best position to determine whether, and which, additional instructions should be given and,

therefore, that his judgment is entitled to great weight. *See Kelly v. State*, 270 Md. 139, 143, 310 A.2d 538 (1973). ("From his vantage point [the trial judge] has the opportunity to surmise which of the phrases in his instructions have been absorbed and which should be embellished or repeated.") We are unable to say that the jury was misled or confused by the reinstruction or that appellant was prejudiced. Certainly nothing in the record suggests it.

### 4. Disclosure of Informant

"The State is privileged to withhold disclosure of an informant's identity to further and protect the public's interest in effective law enforcement." *Jones v. State*, 56 Md.App. 101, 109, 466 A.2d 895 (1983). The privilege is not absolute however and its exercise is a matter which is largely left to the sound discretion of the trial court, *Gulick v. State*, 252 Md. 348, 354, 249 A.2d 702 (1969), *Hardiman v. State*, 50 Md.App. 98, 99, 436 A.2d 923 (1981), which judicial discretion does not have to be exercised until and unless the defense properly demands that an informant's identity be disclosed, *Nutter v. State*, 8 Md.App. 635, 643, 262 A.2d 80 (1970), and shows by a preponderance of the evidence that information concerning the informant is necessary and relevant to a fair defense. *Id.*; *Jones v. State*, 56 Md.App. at 109, 466 A.2d 895; *Whittington v. State*, 8 Md.App. 676, 678–79, 262 A.2d 75 (1970). The burden then shifts to the State to rebut by clear and convincing evidence the showing made by the defense. *Jones*, 56 Md.App. at 109, 466 A.2d 895, *Whittington v. State*, 8 Md.App. at 679, 262 A.2d 75. It is when the case is in this posture that the trial court must

> ... balanc[e] the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

*Roviaro v. United States,* 353 U.S. 53, 62 [77 S.Ct. 623, 629, 1 L.Ed.2d 639] (1957)

Where the informant is a "tipster", and not a participant, accessory, or witness to the crime, disclosure of his identity is not required. *Gulick v. State,* 252 Md. at 356, 249 A.2d 702. On the other hand, where the informant participates in the crime or other activities associated with the crime, evidence of which is introduced into evidence or utilized by the trier of fact in deciding the case, it is reversible error to fail to disclose the informant's identity. *Roviaro v. U.S., supra, Nutter v. State,* 8 Md.App. at 651, 262 A.2d 80. Furthermore, where the defense makes the required showing as to the necessity and relevance of the informant's testimony to a fair defense, the trial court's denial of the motion without having required the State to respond to it is reversible error. *Hardiman v. State,* 50 Md.App. at 105, 436 A.2d 923; *Jones v. State,* 56 Md.App. at 110, 466 A.2d 895. This is so because the court has nothing to balance and because

> [a]bsent some evidence of danger to the life or lives of the informant (or others) threatened by the revelation of the identity, there is a very small auncel on the State's side of the scale. The right to produce one's only defense must predominate over protecting the State's flow of information—as important as that purpose may be. *Id.* at 113, 466 A.2d 895.

The motion to compel disclosure of the informant's identity was made by appellant and his co-defendants.[1] Appellant produced only one witness, himself, who testified for the limited purpose of the motion. Essentially his testimony, boiled down to its essentials, was that following his arrest the detective told him that he had received information from an informant that "three or four persons were involved in" a conspiracy to commit armed robbery; that he

---

**1.** Although appellant's severance motion was granted so that he was tried separately from his co-defendants, the pretrial motions were heard jointly.

was shown a photograph of a man named Wayne Clark, whom he was asked to identify; and that the detective did not believe that he was involved in the conspiracy. One of his co-defendants called Detective Grady as a witness on the motion. Through the collective efforts of defense counsel and the court, all of the information provided by the informant was placed on the record during Detective Grady's examination. Appellant then argued in the trial court, as he does here, that disclosure of the informant's identity was necessary because the informant could: provide exculpatory evidence, as, for example, that there were three, not four, conspirators; corroborate his defense that his presence at the scene was related to a scheduled visit to his parole agent, thus refuting the State's chief witness' testimony;[2] and, if the informant were called to testify, lessen the risk of false testimony. The State responded, as it does here, that the evidence disclosed that the informant was a mere conduit for the information and not an active participant in, or witness to, the crime and that proof of appellant's criminal agency would be, and was, adduced at trial primarily through the testimony of the co-conspirator and corroborated by the police detectives.

At the outset, it is obvious that appellant's testimony, taken alone, did not suffice to meet appellant's burden to show by a preponderance of the evidence that the disclosure of the informant's identity was necessary and relevant to a fair trial. Although relevant to the issue, whether the informant mentioned three or four persons, as opposed to a finite number of conspirators, and whether a detective asked appellant to identify a photograph, do not rise nearly to the level required to shift the burden to the State to respond to the motion. In this case, however, as a

---

**2.** Appellant denied knowledge of or participation in the robbery plan. His defense was that Theodore Shaw had arranged the ride with James Smith to his parole agent and that when the agent was not in and because he did not have money to pay for another mode of transportation home, rather than wait for his agent, he left with James Smith.

part of Detective Grady's testimony, the information could legally satisfy appellant's burden. It is true that it was presented during a co-defendant's case on the motion and not specifically by appellant; but it is also true that it was presented in connection with the very same motion of which appellant was one of the proponents. We believe, therefore, that appellant appropriately relies on the testimony of Detective Grady to satisfy his burden.

As we have seen, the information given the police by the informant involved intimate details of the conspiracy: the name of the driver of the get-away car; the color of that car, its license tag number and the fact that it was a handicapped license tag; the approximate number of persons involved in the conspiracy; the object of the conspiracy; the presence of a handgun in a canvas bag; and the location, as well as approximate time that the object of the conspiracy was to be accomplished. Given the detailed nature of the information, appellant contends that disclosure was clearly required or, at the very least, the State should have been required to rebut his showing that disclosure was justified.

■ Although the detailed nature of the information provided, which tends to support the assumption that the informant was either a participant in the transaction or a witness to the conspiracy, and the State's reliance on the inconclusiveness of the evidence pertaining to the role of the informer, both tend to militate in favor of disclosure, the trial judge exercised his discretion to deny disclosure, ruling that the evidence showed that the informer was a conduit and not a participant. "If the informant merely informed, but did not witness or participate in the criminal act, the judge's discretion is relatively broad." *Hardiman*, 50 Md.App. at 99, 436 A.2d 923. In the instant case, his discretion was exercised after a hearing, at which testimony was taken and during which he had the opportunity to judge whether Detective Grady was dissembling when he testified to not knowing or inquiring about the source of the

informant's information. We cannot say that one who provides detailed information is, of necessity, a witness to, or participant in, a criminal act. Moreover, the State's case was presented without reference to the information obtained from the informer. Under the circumstances, we find no abuse of discretion.

5. Direct Examination Regarding Prior Convictions

Appellant is justified in his proffer that the trial judge erred in precluding him from disclosing his prior convictions on direct examination. Our decisions in *Whitehead v. State*, 54 Md.App. 428, 458 A.2d 905 (1983) and *Chadderton v. State*, 54 Md.App. 86, 456 A.2d 1313 (1983), although not dealing with this precise issue, make clear that a defendant, as a matter of trial strategy, may himself introduce evidence of his prior criminal convictions.

In *Whitehead*, the precise issue was the defendant's entitlement to a limiting instruction with respect to evidence of a prior conviction when the defendant had himself introduced the evidence. We held that a defendant was entitled to such an instruction. Along the way, relying on federal cases, we recognized that "nothing precludes either side from bringing out the prior criminal record of one of its own witnesses on direct examination as a matter of trial strategy ...", *Kitt v. United States*, 379 A.2d 973, 975 (D.C.App.1977), and that the practice of eliciting a witness' prior criminal convictions on direct examination is "well accepted", *U.S. v. Bad Cob*, 560 F.2d 877, 883 (8th Cir.1977). In *Chadderton*, the prosecution was permitted to question several of its witnesses on direct examination about their prior convictions in anticipation of an attack on their credibility. We found that the trial court did not abuse its discretion. 54 Md.App. at 95, 456 A.2d 1313. *See also U.S. v. Vanco*, 131 F.2d 123 (7th Cir.1942).

*Whitehead* and *Chadderton* lead inexorably to the conclusion that appellant should have been permitted to testify, on direct examination, as a matter of trial strategy

as to his prior criminal conviction. The failure to permit the testimony was error.

We now consider whether the error was harmless beyond a reasonable doubt. *Dorsey v. State,* 276 Md. 638, 350 A.2d 665 (1976). Appellant contends that the error is not harmless given the facts of the case. Specifically he says:

> "Here, Appellant explained his presence at the scene in the company of co-conspirators and presented some corroborative testimony from at least one independent source. The weight of the evidence against him derived almost entirely from the co-conspirator's testimony, and a plausible motive for his false implication of Appellant was advanced at trial; viz., desire to be released from jail to attend his sick wife. Under these circumstances, the error was not harmless."

On the other hand, the State argues that the error was harmless, reasoning that the evidence against appellant was substantial.

It is undisputed that appellant's prior convictions were admissible. The only issue is the source and timing of their disclosure. Although we acknowledge that appellant's strategy was designed to minimize the impact of the prosecution's cross-examination by showing appellant's candor, we do not believe that the court's frustration of that design was harmful. *See Kitt v. U.S.,* 379 A.2d 973 (1977), where an identical contention was rejected. Here the evidence against appellant was not insubstantial. We share the sentiments of the Court in *Kitt, supra* at 975: "It is highly doubtful at best whether direct testimony as to [appellant's] prior convictions ... would have altered the jury's evaluation of [his] credibility."

### 6. Speedy trial

Finally, appellant's assertion that he was denied his right to a speedy trial is without merit.

Appellant was arrested on September 21, 1983. He was arraigned on November 18, 1983, at which time he entered a

plea of not guilty and filed a motion for speedy trial. On December 19, 1983, new counsel entered his appearance and, two days later, filed a second motion for speedy trial. Yet a third motion to dismiss for lack of speedy trial was filed, this one on May 15, 1984. Finally on June 18, 1984, the day of trial, the last such motion was filed. In addition to the motions to dismiss for lack of speedy trial, appellant orally moved for severance on May 14, 1984, which was granted on June 19, 1984, the matter having been deferred by the administrative judge for ruling by the trial judge.

To determine if there has been a violation of the constitutional right to speedy trial, we must balance (1) the length of delay; (2) the reasons for the delay; (3) the defendant's assertions of the right; and (4) prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); *Hines v. State*, 58 Md.App. 637, 473 A.2d 1335 (1984). Appellant suggests that a weighing of the factors mandates a finding that his right to speedy trial has been infringed and, therefore, that the case must be dismissed.

### (a) *Length of delay*

At the outset it is necessary to determine if the delay is of constitutional dimension. *State v. Wilson*, 281 Md. 640, 382 A.2d 1053 (1978). The length of delay is computed from date of arrest or filing of indictment, information, or other formal charges against a defendant, to date of trial, *State v. Gee*, 298 Md. 565, 567–72, 471 A.2d 712 (1984), and it is the mechanism which triggers the analysis, as well as a factor to be considered in the balancing process. *State v. Wilson*, 35 Md.App. 111, 120, 371 A.2d 140 (1977), *aff'd* 281 Md. 640, 382 A.2d 1053 (1978). Here, the length of delay is 8 months and 26 days, a period of constitutional dimension. *Epps v. State*, 276 Md. 96, 345 A.2d 62 (1975).

## (b) *Reason for delay*

The period from the date of arrest until February 27, 1984, the first trial date, is attributable to the orderly processing of the case and thus is not chargeable to the State. *Jones v. State*, 279 Md. 1, 367 A.2d 1 (1976); *Epps v. State, supra*. The delay occasioned by the post-ponement of the trial date on March 19, 1984 and April 16, 1984, a period of just short of two months, is neutral. The administrative judge found good cause for these postpone-ments based upon the unavailability of a courtroom on the scheduled trial dates. The record does not disclose an unreasonable period between trial dates.

The postponements of February 27, 1984 and May 14, 1984 constitute the primary focal points of appellant's argu-ment under this heading. His major contention is that the State made a tactical decision to try appellant and his co-defendants in one trial, a decision which it pursued to the date of trial. As such, the delay attributed to that decision is "purposeful" and weighs heavily against the State. In his view, this is appropriately the case when, as here, appellant made prior demands for a speedy trial.

We agree with appellant that the delay is attributa-ble to the State; however, it is accorded but slight weight.

While it is true that appellant, on several occasions, moved to dismiss for lack of speedy trial and the State indeed sought, up to the day of trial, to consolidate the trials of the co-defendants, appellant did not move to sever, or otherwise object to, a consolidated trial until May 14, 1984 and he did not file a written motion for severance until a little over a month later, on June 18, 1984. Regarding the first postponement, as mentioned, appellant did not move to sever and did not object to it. The trial date was set promptly and trial was held on the next scheduled date thus mitigating the effect of the delay. *See Frazier*, 298 Md. 422 at 462, 470 A.2d 1269 (1984); *Epps*, 276 Md. at 112, 345 A.2d 62. In any event, the State's reasons for seeking the

postponements were, under the circumstances, "reasonable and prudent". *Hines,* 53 Md.App. at 655–56, 473 A.2d 1335.

### (3) *assertion of the right*

Appellant asserted his right to speedy trial on November 18, 1983, December 21, 1983, May 15, 1984 and June 18, 1984. Of course, this factor "is entitled to strong evidentiary weight." *Epps,* 276 Md. at 118, 345 A.2d 62.

### (4) *prejudice to the accused*

The only prejudice, which the trial judge found as a fact, and argued by appellant is his pre-trial incarceration, which continued through the trial date. He characterizes the prejudice as resulting from "being repeatedly hauled to court only to be returned to jail each time without trial ..."

### *The balance*

Upon consideration of the four factors, we note that the weight accorded the two months' delay attributable to the State is slight. Although appellant timely asserted his right to speedy trial and was incarcerated throughout the period, the delay was neither of the kind or duration to warrant application of the dismissal sanction.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.