40 A.3d 1122

Aaron DICKERSON

v.

STATE of Maryland.

No. 2977, Sept. Term, 2010.

Court of Special Appeals of Maryland.

March 30, 2012.

---

Allison P. Brasseaux (Paul B. DeWolfe, Public Defender, on the brief), Baltimore, MD, for Appellant.

Jessica Carter (Douglas F. Gansler, Atty. Gen., on the brief), Baltimore, MD, for Appellee.

Panel: MEREDITH, WOODWARD and CHARLES E. MOYLAN, JR. (Retired, Specially Assigned), JJ.

MOYLAN, J.

Once again, we are called upon to revisit *Price v. State,* 405 Md. 10, 949 A.2d 619 (2008), and the recently changed Maryland law with respect to allegedly inconsistent verdicts by a jury in a criminal case. The appellant, Aaron Dickerson, was convicted in the Circuit Court for Prince George's County, in a jury trial presided over by Judge Maureen M. Lamasney, of first-degree assault, second-degree assault, and reckless endangerment. The same jury acquitted the appellant of using a handgun in the commission of a crime of violence and of wearing or carrying a handgun. On this appeal, the appellant raises two questions:

1. Was the conviction for first-degree assault fatally inconsistent with the acquittals on the handgun charges?; and

2. Was Judge Lamasney in error when she answered a jury question about first-degree assault by repeating her original instruction to the jury on the subject of first-degree assault?

### Pertinent Factual Background

Kevin Artis ("Kevin") was the assault victim. On May 15, 2010, as he got out of his car and walked toward his apartment building at 6912 Walker Mill Road in Prince George's County, he was approached by the appellant and two other two young males. The appellant challenged Kevin verbally, "What's up with that situation about Little Bro?" "Little Bro" was the nickname of a young man named Fresh, who had been prosecuted for the attempted robbery of Kevin in December of 2009. At Fresh's trial, Kevin identified Fresh as his assailant. In the current case, Kevin testified that at that earlier trial of Fresh, the appellant and Fresh were together "all the time." After Kevin, in effect, denied "snitching" on Fresh, the appellant again challenged him, "Fuck you . . . are you threatening [Fresh's] life?" As Kevin turned to walk into his apartment

building, he heard the appellant state, "We are going to get him."

As Kevin left his apartment and returned to his car a few minutes later, the appellant again confronted him by demanding to know if he "want to dance?" The appellant then entered what has been referred to as Apartment Building Number 6909. As one of his companions, Darius Reed, then held open the apartment building's door, the appellant began shooting a revolver at Kevin. Kevin ducked into his car, a convertible with the top down, and remained down, as six shots rang out. All six shots missed Kevin but one of them hit the passenger side tire of Kevin's car. After the last shot was fired, Kevin reversed his car down the street and out of the line of fire.

When the police arrived on the scene, they discovered that Kevin's car had a flat tire and that there was a fragment of a bullet in the tire. The police also found two copper bullet fragments 25 feet from the apartment building door from which the appellant had been shooting; as well as two bullet holes in the door itself.

## Inconsistent Verdicts

■ The appellant's primary contention is that the jury verdicts were fatally inconsistent. Although the jury convicted the appellant of first-degree and second-degree assault, along with reckless endangerment,[1] it acquitted the appellant of both the use of a handgun in the commission of a crime of violence and of wearing or carrying a handgun. The only evidence of assault was that the appellant opened the door of the apartment building, pointed a silver revolver out of the door, and fired six shots at Kevin as he ducked down in his car at curbside.

The appellant's argument is that because the assault consisted of firing the silver revolver at Kevin, a conviction for

---

1. The appellant is not pressing the inconsistent verdict argument with respect to his reckless endangerment conviction because he acknowledged that he did not advance such an argument before the trial court.

such an assault was inconsistent with an acquittal for using a handgun in the commission of such an assault and an acquittal for carrying a handgun. There is, at the very least, a surface appeal to the argument, which brings us to the state of the Maryland law on inconsistency in jury verdicts in criminal cases.

The Maryland law with respect to inconsistent jury verdicts in a criminal case has been, to a certain extent, unsettled since 2008. Prior to 2008, such inconsistency was permitted. That changed, however, with *Price v. State*, 405 Md. 10, 23–24, 949 A.2d 619 (2008) ("There is no longer any justification for the one remaining situation where inconsistent verdicts are tolerated, namely certain types of inconsistent verdicts by a jury in a criminal trial. Continued acceptance of inconsistent verdicts, in that one situation, is simply not reasonable."). *Price* was a major departure from traditional Maryland practice and from the majority view throughout the United States.

The thorough and carefully analyzed concurring opinion of Judge Harrell, joined by Judge Battaglia, softened the initial impact of *Price*, as it recognized a distinction, which the majority opinion had not gone into, between legally inconsistent verdicts and factually inconsistent verdicts.

> *I think it important to note explicitly that the Majority's holding applies only to "legally inconsistent" verdicts, not "factually inconsistent" verdicts. The Court should continue to recognize factually or "logically" inconsistent verdicts rendered by juries in criminal cases.*

A factually inconsistent verdict is one where a jury renders "different verdicts on crimes with distinct elements when there was only one set of proof at a given trial, which makes the verdict illogical." Ashlee Smith, *Comment, Vice–A–Verdict: Legally Inconsistent Jury Verdicts Should Not Stand in Maryland*, 35 U.BALT. L. REV. 395, 397 n. 16 (2006). *The feature distinguishing a factually inconsistent verdict from a legally inconsistent verdict is that a factually inconsistent verdict is merely illogical.* By contrast, a legally inconsistent verdict occurs where a jury acts con-

trary to a trial judge's proper instructions regarding the law.

405 Md. at 35, 949 A.2d 619. (Emphasis supplied).

The difference between legal inconsistency and factual inconsistency is well-illustrated by the present case. First-degree assault is a statutory felony spelled out in Maryland Code, Criminal Law Article, § 3–202. It is an aggravated felony. The alternative modalities by which an ordinary assault may be aggravated upward to the first-degree level are two-fold. Section 3–202(a) provides:

§ 3–202. *Assault in the first degree*

(a) *Prohibited.*—

(1) A person may not intentionally cause or attempt to cause serious physical injury to another.

(2) A person may not commit an assault with a firearm, including:

> (i) a handgun, antique firearm, rifle, shotgun, short-barreled shotgun, or short-barreled rifle, as those terms are defined in § 4–201 of this article.

In the second of the aggravating modalities, the handgun, or other firearm, is a legal element of the crime itself. In this case, the acquittal's negating of the element of using a handgun would be legally inconsistent with the necessary presence of such an element for a first-degree conviction based upon the use of such a weapon. If the first-degree assault conviction were necessarily based on this aggravating factor, it would, indeed, be fatally legally inconsistent according to *Price.*

For the other aggravating modality of first-degree assault, however, there is no required element involving a handgun, or any firearm. The aggravation is all in the *mens rea* of the assault. In an assault based on this theory of aggravation, there may well have been factual or logical inconsistency but no legal inconsistency. There was no necessary finding of a legal element which the acquittal had removed from the case.

In the present case, the evidence was sufficient to support a finding of either aggravating modality. The jury was expressly instructed as to both theories of aggravation. Following a question from the jury, Judge Lamasney reinstructed the jury with respect to both forms of possible aggravation.

This Court has consistently followed the guideline of Judge Harrell's concurrence, not as an alternative to the *Price* majority opinion, of course, but simply as an explanation and more comprehensive version of the *Price* opinion. In *Tate v. State*, 182 Md.App. 114, 130, 957 A.2d 640 (2008), *cert. denied*, 406 Md. 747, 962 A.2d 373 (2008), we relied on Judge Harrell's distinction to affirm the conviction in that case.

> In the present case, even if we were to assume, purely *arguendo*, that the two jury verdicts were inconsistent, that inconsistency would amount to the jury's findings that the "rubbing of the outside of the vagina" occurred in the sexual child abuse case but did not occur in the fourth-degree sexual offense case. *That classically would be a factual inconsistency.*

(Emphasis supplied). We made very clear our reliance on the *Price* concurrence.

> *The distinction that the concurring opinion carefully points out between a true legal inconsistency and a mere factual inconsistency is indispensable to any reasonable application of Price v. State.* Without that distinction the majority opinion could easily give rise to an epidemic of promiscuous inconsistency claims. (It probably will anyway, but the concurring opinion will at least help to contain the damage.)

*Id.* (Emphasis supplied). *See also Hicks v. State*, 189 Md.App. 112, 125–30, 984 A.2d 246 (2009).

In *McNeal v. State*, 200 Md.App. 510, 518, 28 A.3d 88 (2011), *cert. granted*, 424 Md. 55, 33 A.3d 981, 2011 Md. LEXIS 873 (Dec. 19, 2011), Judge Salmon wrote for this Court in affirming a factually inconsistent jury verdict on the basis of the distinction explained by the *Price* concurrence:

In this appeal appellant does not contend that the convictions were legally inconsistent. Instead, appellant argues that we should not recognize the distinction between a legally inconsistent verdict, and a factually inconsistent verdict. Appellant does not even cite *Tate,* much less try to distinguish it. For the reasons enunciated in *Tate, we hold that the trial judge did not err in declining to set aside the conviction for possession of a handgun by a prohibited person simply because that conviction was factually inconsistent with the jury's acquittal of appellant for wearing, carrying, or transporting a handgun.*

(Emphasis supplied).

Because the conviction for first-degree assault in this case could well have been based on a theory of aggravated guilt that was not legally inconsistent with the acquittal of the appellant on the handgun charge, we affirm the conviction. *A fortiori,* there was no legal inconsistency with respect to second-degree assault.

### Jury Reinstruction

■ The appellant next argues that the trial judge committed reversible error when she answered a jury question regarding first degree assault during the jury's deliberations. Specifically, the appellant alleges that the judge should have responded "no" to the jury's question "Can the charged party be guilty of first degree assault if no firearm was used to commit the assault?"

■ We review a trial judge's supplementing of the original jury instructions on an abuse of discretion standard. *See Howard v. State,* 66 Md.App. 273, 284, 503 A.2d 739, *cert. denied,* 306 Md. 288, 508 A.2d 488 (1986) ("The decision to supplement its instructions and the extent of supplementation are matters left to the sound discretion of the trial judge, whose decision will not be disturbed on appeal in the absence of a clear abuse of discretion").

Defense counsel objected to the trial court's responding to the jury's question in the affirmative:

[DEFENSE COUNSEL]: What I'm saying is that they've [the jury] got to decide based on what they've heard, and there is nothing, there is no evidence in this case from any witness that anyone except [m]y client pointed a gun in the direction of Kevin Artis and fired the gun a number of times and that one of those bullets came close enough to—there is nothing about him aiding someone or anybody else doing it or anything, so just so the record is clear.

After some argument at the bench, the court decided that it would simply repeat the instruction that had initially been given to the jury.

[THE COURT]: Mr. Foreman, ladies and gentlemen, I have received a note that indicates Charge Number 4, "Can the charged party be guilty of first degree assault if no firearm was used to commit the assault?"

And in answer to that question, let me tell you again the elements of first degree assault:

The defendant is also charged with the crime of first degree assault. In order to convict the defendant of first degree assault, the State must prove all of the elements of second degree assault and must also prove, first, that the defendant used a firearm to commit an assault or the defendant caused or intended to cause serious physical injury in the commission of the assault ... Serious physical injury means injury that creates a substantial risk of death or causes serious or permanent or serious and protracted disfigurement or loss or impairment of the function of any bodily member or organ.

The reinstruction that was given was literally a correct statement of the law and was *verbatim* in the words of Maryland State Bar Association, *Maryland Criminal Pattern Jury Instructions*, 4:01.1 (2005). After some wrangling at the bench about whether the appellant could possibly be guilty as the aider and abettor of one of the companions who was with him at the time of the shooting and the tangled specter of whether, without a gun, a first-degree assault conviction would be only a legal impossibility or also a factual impossibility,

Judge Lamasney exercised her discretion by way of having the jury rely on the original legal definition of first-degree assault. We cannot hold that that was an abuse of discretion.

**JUDGMENTS AFFIRMED; COSTS TO BE PAID BY APPELLANT.**